Filed 3/28/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ARTHUR ZAKARYAN, | B289192 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC647541) |
| v. | |
| THE MEN'S WEARHOUSE, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Richard E. Rico, Judge.  Affirmed.

Gartenberg Gelfand Hayton, Aaron C. Gundzik, and Rebecca G. Gundzik for Plaintiff and Respondent.

Lebe Law, and Jonathan M. Lebe for Plaintiff and Respondent.

Carothers DiSante and Freudenberger, and Amy S. Williams for Defendants and Appellants.

Vorys, Sater, Seymour and Pease, Mark A. Knueve, and Cory D. Catignani for Defendants and Appellants.

\* \* \* \* \* \*

The Labor Code Private Attorneys General Act of 2004 (PAGA) deputizes individual employees to step into the shoes of our state's labor enforcement agency and sue their employers for underpaid wages and additional, statutorily prescribed amounts on behalf of themselves and their aggrieved coworkers.  (Lab. Code, § 2698 et seq.)[1]  In *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 382-392 (*Iskanian*), our Supreme Court held that individual employees cannot contractually agree to arbitrate their potential PAGA claims, but may still contractually agree to arbitrate their "individual damages claims."  If an employee brings a solitary PAGA claim, may a trial court split that claim—that is, may the court send the employee to arbitration (when he has agreed to it) to recover his underpaid wages but retain jurisdiction to award the additional, statutorily prescribed amounts?  Our sister courts are divided on the issue:  *Esparza v. KS Indus., L.P.* (2017) 13 Cal.App.5th 1228 (*Esparza*) has sanctioned such an order, while *Lawson v. ZB, N.A.* (2017) 18 Cal.App.5th 705 (*Lawson*) has not.  Although this issue is pending before our Supreme Court in *Lawson* (*Lawson*, review granted Mar. 21, 2018, S246711), we analyze the issue differently than *Esparza* or *Lawson* but ultimately conclude that courts may not split a solitary PAGA claim and send it to two different fora.  Accordingly, we affirm the trial court's order denying the motion to compel arbitration in this case.

---

1      All further statutory references are to the Labor Code unless otherwise indicated.

# FACTS AND PROCEDURAL BACKGROUND

## I. Facts

Arthur Zakaryan (plaintiff) started working as a store manager for defendants, The Men's Wearhouse and Tailored Brands, Inc. (collectively, The Men's Wearhouse) in November 2002. As its homophonic name suggests, the Men's Wearhouse sells men's clothing and accoutrement. Due to work performance issues, The Men's Wearhouse in early 2016 gave plaintiff the option of accepting a demotion out of management or resigning. Plaintiff opted to resign, and did so in February 2016.

By the time of his resignation, plaintiff had signed or by his conduct agreed to two different arbitration agreements with The Men's Wearhouse—one in 2006 and a second in 2015. Under the terms of the 2006 agreement, plaintiff agreed to arbitrate "any and all claims, disputes and controversies . . . includ[ing] . . . any [c]laim arising from [his] employment . . . or its termination," but that agreement expressly excluded "collective" or "representative action[s]." Under the terms of the 2015 agreement, plaintiff agreed to arbitrate "all claims or controversies . . . whether or not arising out of [his] employment (or its termination)" and to "waive any right to bring" "any class, collective, or representative action," but that agreement expressly excluded any PAGA claims "otherwise covered by this Agreement."

## II. Procedural Background

In January 2017, plaintiff sued The Men's Wearhouse. "[O]n behalf of all aggrieved employees currently and formerly employed" as The "Men's Wearhouse store managers," plaintiff alleged a "representative action" under PAGA on the ground that The Men's Wearhouse had wrongly misclassified managers as exempt from California's laws regarding overtime pay and meal

and rest breaks. This underpayment also rendered the managers' wage statements inaccurate and entitled those who had quit or been fired to "waiting time penalties" under section 203. Plaintiff prayed for "unpaid and underpaid wages of all aggrieved employees," the additional penalties incorporated into PAGA from more specific Labor Code provisions, prejudgment interest, attorney fees and "further and other injunctive and equitable relief."

After *Esparza* was decided, The Men's Wearhouse filed a motion to compel arbitration of the portion of plaintiff's PAGA claim seeking reimbursement of underpaid wages. The motion to compel was filed nearly six months after The Men's Wearhouse had answered plaintiff's complaint without raising arbitration as a defense.

Following full briefing and a hearing, the trial court denied the motion to compel. The court found *Lawson* more persuasive than *Esparza*, and in so doing rejected the notion that plaintiff's PAGA claim could be split in order to send the underpaid wages portion to arbitration.

The Men's Wearhouse filed this timely appeal.

## DISCUSSION

The Men's Wearhouse challenges the trial court's refusal to order arbitration of the portion of plaintiff's PAGA claim that seeks to recover his underpaid wages. As noted above, the California courts currently disagree about a trial court's authority to order a *portion* of a PAGA claim to arbitration: One case says this is permissible (*Esparza, supra,* 13 Cal.App.5th at p. 1234), while most others have said it is not (*Lawson, supra,* 18 Cal.App.5th at p. 712; *Williams v. Superior Court* (2015) 237 Cal.App.4th 642, 649 (*Williams v. Superior Court*); *Betancourt v.*

4

*Prudential Overall Supply* (2017) 9 Cal.App.5th 439, 448; *Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665, 677-678 (*Tanguilig*); *Perez v. U-Haul Co. of California* (2016) 3 Cal.App.5th 408, 420-421 (*Perez*)).[2]  Because the arbitrability of a portion of a PAGA claim presents a legal question that lies at the intersection of California labor law and arbitration law, our review is de novo.  (*Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 864 (*Julian*) [where denial of a motion to compel "relies on a determination of law," review is "de novo"].)  We start with a brief overview of these two areas of law, then apply them to the question before us.

## I.      Pertinent Background Law

### A.      *California labor law*

#### 1.      *Substantive protections*

California labor law grants employees two protections relevant to this appeal.

The law prohibits employers from requiring their employees to work more than eight hours in a day, 40 hours in a week or six days in a row at their regular hourly rate of pay (the overtime rules).  (§ 510, subd. (a).)  These rules do not apply to (and therefore exempt) "executive, administrative, and professional employees."  (§ 515, subd. (a).)  If an employer does not comply with the overtime rules applicable to a non-exempt employee, that employee is entitled to premium pay of 1.5 times his regular hourly pay, and to twice his regular hourly pay if

---

[2]      The federal courts interpreting California law are no less divided.  (Compare *Mandviwala v. Five Star Quality Care, Inc.* (9th Cir. 2018) 723 F. App'x. 415, 417-418 [PAGA claim may be split] with *Whitworth v. SolarCity Corp.* (N.D. Cal. 2018) 336 F. Supp. 3d 1119, 1124-1126 [PAGA claim may not be split].)

required to work more than 12 hours in a day or more than eight hours on the seventh day in a row.  (§ 510, subd. (a).)  What is more, the employer's failure to compensate the employee at the statutory premium pay rate means that the employee's pay checks are inaccurate and, if the employee quits or is fired, may mean that he was willfully not paid the full amount of his unpaid wages when he departed, each of which constitutes a separate Labor Code violation with its own additional penalty.  (§§ 226, subds. (a)(1), (a)(2), (a)(5) & (a)(9), 203; see *Maldonado v. Epsilon Plastics, Inc.* (2018) 22 Cal.App.5th 1308, 1331-1332 [willful failure to pay overtime premiums violates law requiring timely payment of full wages to departing employee].)

The law also requires that employers afford their employees meal and rest periods during any shift longer than five hours (for meal periods) and three and one-half hours (for rest periods) (the meal and rest period rules).  (§§ 226.7, subd. (b), 512, subd. (a); Cal. Code Regs., tit. 8, § 11070, subds. (11))(A) & (12)(A) [mercantile industry].)  These rules also do not apply to "executive, administrative, and professional employees."  (§ 515, subd. (a); Cal. Code Regs., tit. 8, § 11070, subd. (1)(A).)  If an employer does not comply with the meal and rest break rules applicable to non-exempt employees, an employee is entitled to an additional hour's pay for each workday that a meal or rest period was not offered.  (§ 226.7, subd. (c).)

2.    *Enforcement mechanisms*

a.    Pre-PAGA mechanisms

Traditionally, the Labor Code provides several mechanisms for three different actors to enforce the above described labor laws.

6

First, the aggrieved employee may seek judicial or administrative relief.  In terms of judicial relief, the employee may "file[] an ordinary civil action against the employer" for (1) breach of contract (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1084 (*Reynolds*), abrogated on other grounds in *Martinez v. Combs* (2010) 49 Cal.4th 35), (2) restitution under the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 177-178), or (3) violation of the Labor Code provision at issue if (and only if) the Code authorizes individual employees to bring a claim based on that provision (§§ 1194, subd. (a) [authorizing civil suit to recover "unpaid balance" of overtime premium pay], 218 [authorizing civil suit to recover pay for missed meal and rest periods and waiting time penalty]).  No matter what the legal theory advanced, the employee's recovery is limited to the damages owed, which includes the amounts of premium pay prescribed by statute but excludes any statutorily prescribed civil penalties over and above those amounts.  (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1109-1113, 1115 (*Murphy*) [overtime payment and meal and rest break pay recoverable in civil suit]; *Atempa v. Pedrazzani* (2018) 27 Cal.App.5th 809, 827 (*Atempa*) [relief in civil action limited to ""'"damages, reinstatement, and other appropriate relief *but . . . not . . . civil penalties*" [citation]'"], italics in original; *Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 578 [same].)  In terms of administrative relief, the employee may file a wage claim with, and to be adjudicated before, the Labor Commissioner.  (§§ 98-98.8; *Reynolds,* at p. 1084.)

Second, the Labor Commissioner may initiate proceedings against the employer.  (§§ 1193.6 [authorizing suit for "unpaid

7

overtime compensation"], 1194.5 [authorizing suit for injunctive relief], 217 [authorizing suit to recover penalties].)  For violation of the overtime and meal and rest period rules, section 558 specifies what the commissioner may recover—namely, (1) underpaid wages, and (2) an additional $50 for the first violation against *each* employee for *each* pay period, and $100 for any subsequent violation against *each* employee for *each* pay period. (§ 558, subd. (a).)  Any "[w]ages recovered" under section 558 go to the "affected employee" (§ 558, subd. (a)(3)); all the rest goes to the Labor and Workforce Development Agency (the agency) (§ 558, subd. (b); *Iskanian*, *supra*, 59 Cal.4th at p. 378).  Only the Labor Commissioner may directly sue under section 558; individual employees may not.  (*Atempa*, *supra*, 27 Cal.App.5th at p. 826, fn. 13 ["section 588 . . . do[es] not provide for a private right of action to recover the civil penalties authorized under [that] statute[]"]; *Robles v. Agreserves, Inc.* (E.D. Cal. 2016) 158 F. Supp. 3d 952, 1006 [same].)

Third, the local prosecuting authority may prosecute the employer because the violations of some provisions of the Labor Code are designated as misdemeanors (e.g., §§ 215, 216, 218) or infractions (e.g., § 226, subd. (c)).

b.    PAGA

Recognizing that the enforcement authorities had insufficient incentive and resources to sue employers for Labor Code violations (*Iskanian*, *supra*, 59 Cal.4th at p. 379), our Legislature enacted PAGA in 2003 to create a fourth mechanism for enforcing California's labor laws.  As its full name suggests, PAGA establishes a default penalty for *all* Labor Code violations and, more significantly, declares individual, "aggrieved" employees to be "private attorney[] general[s]" acting "as the

8

proxy or agent of the state's labor law enforcement agencies" and, in that capacity—*and only in that capacity*—authorizes them to bring "civil action[s]" "on behalf of" themselves "and other current or former employees." (§ 2699, subds. (a) & (f); *Arias v. Superior Court* (2009) 46 Cal.4th 969, 980, 986 (*Arias*); *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003; see also *Iskanian*, at p. 382 [noting that a PAGA claim is "a type of qui tam action"].)

Nearly every contour of a PAGA claim flows from the ineluctable premise that a PAGA action is "'fundamentally a law enforcement action designed to protect the public and not to benefit private parties.'" (*Arias*, *supra,* 46 Cal.4th at p. 986.) The employee may not file his or her PAGA claim for particular labor law violations until first giving the agency the opportunity to investigate and file the claim itself (§§ 2699, subd. (a), 2699.3 [setting forth procedures for notifying agency]; *Williams v. Superior Court* (2017) 3 Cal.5th 531, 545-546 (*Williams*)) and, if the agency elects not to get involved, the agency is nevertheless legally bound by the outcome of the employee-prosecuted PAGA claim (*Arias,* at pp. 985-986; *Tanguilig*, *supra*, 5 Cal.App.5th at p. 671). Just as an action by the agency would be on behalf of all aggrieved employees, the individual PAGA plaintiff also represents all other aggrieved employees. (*Julian*, *supra*, 17 Cal.App.5th at p. 866, fn. 6; *Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 750-751 (*Huff*) [PAGA plaintiff has standing as long as any other employee is "aggrieved," even if he himself was not injured by all alleged violations].) And PAGA splits the "civil penalties recovered" in a way that favors the agency: 75 percent goes to the agency (to use for enforcement, administration and education) and only 25

percent goes to the "aggrieved employees."  (§ 2699, subds. (i) & (j).)

## B.    *Arbitration law*

Private parties, including employers and employees, may generally agree by contract to resolve their disputes through arbitration.  (*Rent-A-Center W., Inc. v. Jackson* (2010) 561 U.S. 63, 67 ["arbitration is a matter of contract"].)  Such contracts are enforceable as a matter of federal law under the Federal Arbitration Act (FAA).  (9 U.S.C. § 2 ["A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract."]; *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 344 ["The 'principle purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.' [Citation.]"]; *Epic Systems Corp. v. Lewis* (2018) 138 S.Ct. 1612, 1632 (*Epic Systems*) ["Congress has instructed that arbitration agreements [between private employers and employees] must be enforced as written."].)

In *Iskanian*, *supra*, 59 Cal.4th 348, our Supreme Court carved out an exception to this general rule when it held that an employee could not contractually agree to give up a potential PAGA claim against his or her employer.  (*Id.* at pp. 378-392.) *Iskanian* first declared that such "PAGA waivers" were against public policy because (1) they constitute an indirect agreement to exempt the employer from violations of California's labor laws, and (2) private parties cannot agree to waive a "'law established

10

for a public reason.'" (*Id.* at pp. 382-383.) *Iskanian* then determined that the FAA did not preempt its "no waiver" rule because the FAA is concerned with "ensur[ing] an efficient forum for the resolution of *private* disputes, whereas a PAGA [claim] is a dispute between an employer and the state Agency." (*Id.* at p. 384; see also *id.* at pp. 386-387; *see also Correia v. NB Baker Electric, Inc.* (Feb. 25, 2019, D073798) __ Cal.App.5th __ [19 D.A.R. 1455, 1455] [*Epic Systems* did not overturn *Iskanian*, as only *Iskanian* deals with "a claim for civil penalties brought *on behalf of the government . . .*"], italics in original.) The court nevertheless recognized that an employee's non-PAGA claims for "individual damages" *were* private disputes and thus, under the FAA, could be sent to arbitration if the employer and employee so agreed. (*Iskanian*, at p. 391.)

## II.    Analysis

The trial court's denial of the motion to compel arbitration turns on whether an individual employee's PAGA claim seeking remedies available to the agency under section 558 may be split into two claims based on the remedies sought—with the claim for underpaid wages under section 558 being shunted to arbitration while the claim for the further $50 and $100 per-pay-period penalties under section 558 remaining in court. We conclude that splitting a PAGA claim in this manner is both (1) legally impermissible and (2) inconsistent with labor and arbitration law.

### A.    *Impermissible claim splitting*

California follows the primary rights theory. This theory provides that "'one injury gives rise to only one claim for relief'" (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798 (*Boeken*)), and accordingly prohibits a plaintiff from "'divid[ing] a

11

primary right and enforc[ing] it in two suits'" whether in a judicial or arbitral forum (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 904; *Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 708; *Cal Sierra Development, Inc. v. George Reed, Inc.* (2017) 14 Cal.App.5th 663, 677-678 (*Cal Sierra*)). A primary right is not defined by the legal theory asserted (*Cal Sierra*, at pp. 677-678) or the remedy sought (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681 (*Crowley*); *Hi-Desert Medical Center v. Douglas* (2015) 239 Cal.App.4th 717, 734). Instead, a "primary right" is defined by "the plaintiff's right to be free from the particular injury suffered." (*Crowley*, at p. 682.) As a general matter, "the same primary right" is at stake "[w]hen two actions involving the same parties seek compensation for the same harm." (*Boeken*, at p. 798.)

Splitting a PAGA claim into two claims—a claim for underpaid wages and a claim for the $50/$100 per-pay-period penalties PAGA incorporates from section 558—runs afoul of the primary rights doctrine because it impermissibly divides a single primary right. That is because an individual employee bringing a PAGA claim is vindicating one *and only one* "particular injury"—namely, the injury to the public that the "state labor law enforcement agencies" were created to safeguard. (*Arias*, *supra*, 46 Cal.4th at p. 986 ["In a lawsuit brought under [PAGA], the employee plaintiff represents the same legal right and interest as the state labor law enforcement agencies"]; *Iskanian*, *supra*, 59 Cal.4th at pp. 380, 387 [same].) The individual PAGA plaintiff's "personal claim" for underpaid wages, our Supreme Court has noted, is "not at stake." (*Williams*, *supra*, 3 Cal.5th at 547, fn. 4.) Indeed, this is why the individual PAGA plaintiff and the other aggrieved employees represented by that PAGA claim may still

12

bring separate individual claims for underpaid wages and why any nonparty aggrieved employees are not bound by any adverse PAGA judgment when pursuing those individual claims. (§ 2699, subd. (g)(1) ["Nothing in [PAGA] shall operate to limit an employee's right to pursue or recover other remedies available under state or federal law, either separately or concurrently with an action taken under this part."]; *Arias,* at pp. 985-987 [for purposes of civil penalties, a PAGA judgment "is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding," but where the employer prevails, nonparty employees are not bound as to remedies other than civil penalties].) Because an individual PAGA plaintiff is at all times acting on behalf of the agency when seeking underpaid wages as well as the $50/$100 penalty, his pursuit of both remedies "involv[es] the same parties seek[ing] compensation for the same harm" and thus involves "the same primary right." (*Boeken, supra*, 48 Cal.4th at p. 798; cf. *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 377-384 [on demurrer, court may strike portions of PAGA claim seeking additional penalties over and above underpaid wages when the individual PAGA plaintiff has not first presented his PAGA claim to the agency].)

Contrary to what The Men's Wearhouse argues, our conclusion is consistent with *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066 (*Broughton*) and *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303 (*Cruz*). *Broughton* held that an individual plaintiff's claim under the Consumer Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.) could be split into two and shunted into two different fora—namely, his claim for damages sent to arbitration and his claim for injunctive

relief to "enjoin[][the defendant's allegedly] deceptive [methods, acts and] practices" to remain in court. (*Boughton*, at pp. 1079-1084.) Following on *Broughton*'s heels, *Cruz* held that an individual plaintiff's claim under the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.) could likewise be split into two and shunted into two different fora—namely, his claim for restitution to arbitration and his claim for injunctive relief to "'enjoin[] [the defendant's allegedly] wrongful acts and practices'" to remain in court. (*Cruz*, at pp. 308-309, 312-313, 315.) *Broughton* and *Cruz* sanctioned the claim splitting because the individual plaintiff's CLRA and UCL claims, respectively, involved two primary rights—namely, the individual plaintiff's right to be made whole (through damages or restitution) and the public's right to be protected from deceptive or wrongful practices (through a "public injunction" sought by the individual plaintiff "act[ing] in the purest sense as a private attorney general"). (*Cruz*, at p. 312; *Broughton*, at pp. 1079-1080, 1084; see also *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 961 ["the public injunctive relief available under the UCL [and] the CLRA . . . is primarily 'for the benefit of the general public' . . . [and] 'not to resolve a private dispute'"].) In other words, individual CLRA and UCL plaintiffs sometimes wear two hats while the employee who brings a solitary PAGA action always wears but one; the former may accordingly be split while the latter may not.

### B. *Inconsistency with labor and arbitration law*

Even if the primary rights doctrine did not categorically bar a court from splitting a PAGA claim and sending the portion seeking underpaid wages to arbitration, such a procedure cannot be reconciled with labor law or arbitration law.

1. *Labor law*

There are three reasons why splitting an individual PAGA claim into a claim for underpaid wages and a claim for "civil penalties" cannot be squared with the labor law that PAGA is designed to enforce.

First, PAGA awards the "aggrieved employee"-plaintiff a single, indivisible civil penalty that is to be split between the agency (which receives 75 percent) and the "aggrieved employee[s]" (who receive 25 percent).  (§ 2699, subds. (a) & (i).)  PAGA empowers the employee-plaintiff to "recover" the "civil penalty" that would otherwise "be assessed and collected by the" agency (§ 2699, subd. (i)), and section 558 defines what the "civil penalty" is for violations of the overtime and meal and rest period rules—namely, a per-pay-period penalty of $50 or $100 "in addition to an amount sufficient to recover underpaid wages" (§ 558, subds. (a)(1) & (a)(2)).  (See *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 59 ["plain meaning of [a statute's] actual words" controls].)  PAGA then specifies that this singular penalty is to be allocated as follows:  75 percent of *all* "civil penalties recovered" (that is, 75 percent of *both* the underpaid wages and $50/$100 additional penalties together) to the agency, and the remaining 25 percent of those penalties to the "aggrieved employees."  (§ 2699, subd. (i).)  (*Atempa, supra*, 27 Cal.App.5th at pp. 828-829 [reaching same conclusion]; *Moorer v. Noble L.A. Events, Inc.* (Feb. 11, 2019, B282631) __ Cal.App.5th __ [19 D.A.R. 1665, 1667] (*Moorer*) [same]; accord, *Iskanian*, 59 Cal.4th at pp. 360, 388 [consistent with 75 percent of entire penalty going to agency, remarking that "most of the proceeds of [PAGA] litigation" would be "going to the state" and would "largely go to state coffers"].)  PAGA's textually mandated

15

allocation of a single "civil penalty" between the agency and aggrieved employees in a 75/25 percent split is inconsistent with splitting a PAGA claim along the very different fault line between underpaid wages and the additional per-pay-period penalty.

The Men's Wearhouse argues that there is no inconsistency because (i) section 558 supersedes PAGA's 75/25 percent allocation rule, and (ii) section 558 creates two separate penalties (namely, an underpaid wages penalty and a per-pay-period penalty) rather than a single, indivisible penalty, and expressly provides that the underpaid wages penalty "shall" be allocated to "the affected employee[s]" (§ 558, subd. (a)(3)).  We reject this argument because both of its premises are invalid.

With regard to the first premise, PAGA's allocation rule trumps section 558's.  This result is dictated by the rules of statutory construction.  PAGA, as the later-enacted statute, supersedes section 558 unless section 558 is the more specific statute.  (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 960-961 (*State Department*); Stats. 2003, ch. 906, § 2, p. 6629, eff. Jan. 1, 2004 [PAGA]; Stats. 1999, ch. 134, § 14, pp. 1826-1827 [section 558].)  However, neither PAGA nor section 558 is more specific than the other because each statute deals with its own distinct (and hence equally specific) subject:  Section 558 sets the default "civil penalty" for certain Labor Code violations and defines how to allocate the civil penalty recovered when the agency is the plaintiff, while PAGA authorizes aggrieved employees to bring suit as the agency's proxy and defines how to allocate the "civil penalty" recovered when that employee is the plaintiff bringing a PAGA claim.  This result is also dictated by the structure of PAGA.  PAGA borrows the

16

penalty amounts from the various Labor Code statutes that it empowers an individual employee to vindicate on behalf of the agency, but PAGA provides the overarching procedural rules that govern such employee-prosecuted claims. (Accord, *Amalgamated Transit, supra,* 46 Cal.4th at p. 1003 [characterizing PAGA as "simply a procedural statute"].) If, as The Men's Warehouse implores, PAGA *also* incorporated the allocation rules from the various Labor Code statutes, a single PAGA claim could be governed by a patchwork of competing and conflicting allocation rules. We prefer PAGA's streamlined pattern to the crazy quilt alternative.

With regard to the second premise, and as we explain above, the text of section 558 defines a single "civil penalty." (See also *Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1145 (*Thurman*) [section 558's "civil penalty . . . consists of *both* the $50 or $100 penalty amount *and* any underpaid wages"].) That section 558 refers to the per-pay-period penalties as being "in addition to" the underpaid wages does not create two separate remedies; instead, it defines two components of a singular "civil penalty" that is recoverable in a PAGA action. Nor, as The Men's Warehouse urges, does the per-pay-period penalty somehow become a separate "penalty" distinct from underpaid wages because the per-pay-period penalty is a fixed amount or because it can be called a "civil penalty" rather than "statutory [damages]"; a single civil penalty can be made up of components that include fixed amounts (*Murphy, supra,* 40 Cal.4th at pp. 1112-1113) and the semantics of assigning labels to the components of a statute's penalty cannot trump the statute's textual creation of a single penalty (*Iskanian, supra,* 59 Cal.4th at p. 388).

Second, a PAGA claim is, fundamentally, a representative claim. As noted above, the "aggrieved employee" who brings a PAGA claim is representing the agency and, while proceeding in the agency's stead, is also representing all of the other aggrieved employees. (*Julian*, *supra*, 17 Cal.App.5th at p. 866, fn. 6; *Huff*, *supra*, 23 Cal.App.5th 745, 750-751.) PAGA allocates 25 percent of the civil penalties recovered to the "aggrieved employees" to give individual employees an incentive to sue on the agency's behalf, *not* as a means of awarding "victim-specific relief." (*Whitworth*, *supra*, 336 F. Supp. 3d at p. 1126; *Iskanian*, *supra*, 59 Cal.4th at pp. 387-388.) Indeed, this distinction between "a PAGA litigant's status as 'the proxy or agent' of the state" rather than as a private party "purs[uing] . . . victim-specific relief" is the very reason *Iskanian* cited for declaring PAGA claims exempt from arbitration. (*Iskanian*, at pp. 387-388; see also *id.* at p. 381 ["The civil penalties recovered on behalf of the state under the PAGA are distinct from the statutory damages to which employees may be entitled in their individual capacities."].) Breaking off the portion of a PAGA claim seeking underpaid wages on the ground that those wages constitute "victim-specific relief," as The Men's Wearhouse urges, ignores the representative nature of a PAGA claim as well as one of the cornerstone principles of *Iskanian*.

Third, an aggrieved employee's choice to bring a solitary PAGA claim is his choice to make. As noted above, an aggrieved employee desiring to pursue judicial (rather than administrative) relief for his employer's violation of the overtime or meal and rest period rules has the option of (1) filing a lawsuit asserting a claim in his individual capacity (§§ 1194, 218) or (2) filing a lawsuit asserting a PAGA claim (§ 2699). If he chooses the former, the

employee gets to keep all of his awarded underpaid wages, but the claim is subject to arbitration if he has so agreed. (§§ 1194, 218; *Iskanian, supra*, 59 Cal.4th at p. 391.) If he chooses the latter, the employee gets to recover underpaid wages and per-pay period penalties for himself and his fellow employees in court (rather than arbitration), but he is required to give 75 percent of the total recovery to the agency and to split the remaining 25 percent with his fellow employees. (§§ 2699, subds. (a) & (i); *Iskanian*, at pp. 378-392; *Moorer, supra*, __ Cal.App.5th __ [19 D.A.R. 1665, 1667].) Each has its pros and cons, but the choice of which to pursue is ultimately the employee's call. (*Iskanian*, at p. 383 ["employees are free to choose whether or not to bring PAGA actions when they are aware of Labor Code violations."]; *id*. at p. 387 [same].) Where, as here, the employee-plaintiff elected to file a solitary PAGA claim,[3] splitting that claim into two effectively rewrites his complaint into one asserting an individual claim for underpaid wages (which is shunted to arbitration) and a PAGA claim (which is not). This makes the employee's choice meaningless.

### 2. *Arbitration law*

Splitting an individual PAGA claim into a claim for underpaid wages and a claim for "civil penalties" also cannot be squared with the law governing arbitration. *Iskanian* held that

---

[3] Although plaintiff initially alleged his entitlement to "all underpaid wages recovered" under PAGA, that allegation does not bear on his election to pursue a solitary PAGA claim because he elected not to plead a separate claim for individual damages, because his legally incorrect allegation is a nullity (*Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955), and because he retracted that allegation in his appellate brief.

19

arbitration of a PAGA claim is "contrary to public policy" and that contracts purporting to mandate arbitration of PAGA claims are "unenforceable as a matter of . . . law." (*Iskanian*, *supra*, 59 Cal.4th at pp. 360, 382-384.) Splitting a PAGA claim and requiring the employee to arbitrate his entitlement to underpaid wages, likely while the remainder of his PAGA claim is stayed pending the arbitration (Civ. Proc. Code, § 1281.4 [mandating stay "until an arbitration is had" when a portion of a lawsuit is sent to arbitration]), eviscerates *Iskanian*'s mandate because it sends the chief issue underlying a PAGA claim—that is, whether the employer violated labor law (thereby entitling the employee to underpaid wages)—to arbitration. It also offends *Iskanian*'s reasons for barring arbitration because it effectively allows the employee, by contract, to bind the agency to arbitration. (*Iskanian*, at pp. 382-383.) Not surprisingly, other decisions have refused to sanction the arbitration of the "individual" aspects of a PAGA claim while leaving the "representative" aspects in court. (E.g., *Perez*, *supra*, 3 Cal.App.5th at pp. 420-421 ["California law prohibits the enforcement of an employment agreement provision that requires an employee to individually arbitrate whether he or she qualifies as an 'aggrieved employee' under PAGA"]; *Williams v. Superior Court*, *supra*, 237 Cal.App.4th at pp. 644-646 [same].) We join those decisions.

### C.    Esparza *and* Lawson

Our resolution of the question presented in this case puts us at odds with *Esparza* and, to a lesser extent, with *Lawson*. *Esparza* held that a PAGA claim may be split and the portion seeking underpaid wages sent to arbitration because, in *Esparza*'s words, the portion seeking underpaid wage "retain[s] [its] private nature." (*Esparza*, *supra*, 13 Cal.App.5th at p. 1246.)

20

As explained above, we reject the notion that *any* portion of a PAGA claim is "private" because "the real party in interest" for a PAGA claim is at all times "the government entity on whose behalf the [employee-]plaintiff files suit." (*Iskanian*, *supra*, 59 Cal.4th at p. 382.) Also, as explained above, we reject *Esparza*'s subsidiary holding that section 558's requirement that "all . . . underpaid wages . . . go to the aggrieved employee" applies in a solitary PAGA claim on the ground that section 558 is more specific than PAGA. (*Esparza*, at p. 1243, fn. 4.) *Lawson* held that a PAGA claim may not be split in order to send the portion seeking underpaid wages to arbitration, but agreed with *Esparza*'s subsidiary holding that the individual PAGA plaintiff (and, presumably, his coworkers) are entitled to 100 percent of the underpaid wages. (*Lawson*, *supra*, 18 Cal.App.5th at pp. 721, 724-725.) We agree with *Lawson*'s central holding but disagree with its subsidiary holding regarding the allocation of the "civil penalties" recovered.

\* \* \* \* \* \*

In light of our conclusion that the trial court properly denied the motion to compel arbitration, we have no occasion to reach plaintiff's proffered alternative grounds for affirmance—namely, that the 2015 arbitration agreement did not require arbitration of PAGA claims, that the 2006 arbitration agreement applied, and that The Men's Wearhouse waived the right to seek arbitration by not filing its motion until *Esparza* was decided.

21

# DISPOSITION

The order is affirmed.  Plaintiff is entitled to his costs on appeal.

**CERTIFIED FOR PUBLICATION**.


_____, J.
HOFFSTADT

We concur:


_____, Acting P.J.
ASHMANN-GERST


_____, J.
CHAVEZ