Filed 2/2/23 Modified and Certified for Pub. 2/24/23 (order attached)
Opinion following transfer from Supreme Court

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TRICIA GALARSA, | F082404 |
| Plaintiff and Respondent, | (Super. Ct. No. BCV-19-102504) |
| v. | **OPINION** |
| DOLGEN CALIFORNIA, LLC, | |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County. Thomas S. Clark, Judge.

McGuire Woods, Mathew C. Kane, Amy E. Beverlin, Sabrina A. Beldner and Travis Gunn for Defendant and Appellant.

Robins Kaplan, Clarkson Law Firm, and Glenn A. Danas; The Bainer Law Firm, and Matthew R. Bainer for Plaintiff and Respondent.

-ooOoo-

Plaintiff Tricia Galarsa sued her former employer, Dolgen California, LLC (Dollar General), to recover civil penalties under the Private Attorneys General Act of 2004

---

[*]     Before Franson, Acting P. J., Peña, J. and Snauffer, J.

(PAGA; Lab. Code, § 2698 et seq.)[1] for various Labor Code violations suffered by her or by other employees. Dollar General moved to compel arbitration, which the superior court denied. In November 2021, we affirmed the trial court's order. That affirmance was vacated by the United States Supreme Court when it granted Dollar General's petition for writ of certiorari and remanded the case for further consideration in light of *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. ___ [142 S.Ct. 1906] (*Viking River*).

First, we conclude *Viking River* and the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) do not invalidate the rule of California law that a provision in an arbitration agreement purporting to waive an employee's right to pursue representative actions is not enforceable as to representative claims pursued under PAGA. Second, the severability clause in the arbitration agreement allows the unenforceable waiver provision to be stricken from the arbitration agreement. Third, we interpret the surviving provisions of the agreement to require arbitration of the PAGA claims that seek to recover civil penalties for Labor Code violations *suffered by plaintiff*. Consequently, those claims must be sent to arbitration in accordance with the principles established by *Viking River* and the FAA.

We further conclude the PAGA claims seeking to recover civil penalties for Labor Code violations *suffered by employees other than plaintiff* may be pursued by plaintiff in court. Thus, we disagree with the United States Supreme Court's conclusion that California law requires the dismissal of those claims. More specifically, we conclude plaintiff is an aggrieved employee with PAGA standing and the general rule against splitting a cause of action does not apply to the two types of PAGA claims.

Therefore, the order denying Dollar General's motion to compel arbitration is reversed in part and affirmed in part.

---

[1]    Unlabeled statutory references are to the Labor Code.

# FACTS

In March 2016, plaintiff applied for employment with Dolgen California, LLC (Dollar General), a wholly owned subsidiary of Dollar General Corporation.  As part of the application and hiring process, plaintiff accessed Dollar General's Express Hiring system, which allows persons to receive, review, and acknowledge documents related to their hiring and employment.  On March 30, 2016, plaintiff electronically signed Dollar General's arbitration agreement by typing her initials into the text box next to the words "My Initials" and dating the form.  She also marked a box stating she agreed to the terms of the arbitration agreement and understood that by checking the box, both Dollar General and she would be bound by the agreement's terms.  Plaintiff did not opt out of arbitration.  The arbitration agreement stated:

> "**Dolgen California LLC ('Dollar General') has a process for resolving employment related legal disputes with employees that involves binding arbitration.  This Dollar General Employee Arbitration Agreement ('Agreement') describes that process and constitutes a <u>mutually binding</u> agreement between you and Dollar General, subject to opt out rights described at the end of this Agreement**.

> "You agree that, with the exception of certain excluded claims described below, any legal claims or disputes that you may have against Dollar General … arising out of your employment with Dollar General or termination of employment with Dollar General ('Covered Claim' or 'Covered Claims') will be addressed in the manner described in this Agreement. You also understand that any Covered Claims that Dollar General may have against you related to your employment will be addressed in the manner described in this Agreement.

> "<u>**Class and Collective Action Waiver**</u>**:  You and Dollar General may not assert any class action, collective action, or representative action claims in any arbitration pursuant to the Agreement or in any other forum. You and Dollar General may bring individual claims or multi-plaintiff claims joining together not more than three plaintiffs, provided that the claims are not asserted as a class, collective or representative action.  Non-representative, multi-plaintiff arbitrations (up to the three-plaintiff limit) may only be filed if each of the plaintiff's claims: (1) arises out of the same transaction, occurrence, or series of**

3.

**transactions or occurrences; (2) arises out of the same work location; and (3) presents a common question of law or fact. A challenge to a multi-plaintiff action can be initiated by any party by filing a motion to dismiss or sever one or more parties. The arbitrator shall rule upon the motion to dismiss or sever based upon the standards set forth in this Paragraph. NOTE: This waiver does not apply to claims under the National Labor Relations Act.**"

The arbitration agreement stated its procedures "will be the exclusive means of resolving Covered Claims relating to or arising out of your employment or termination of employment with Dollar General." The covered claims included alleged violations of wage and hour laws and alleged violations of any other state or federal laws.

The agreement contained the following severability clause: "If any parts of this Agreement are found to be invalid, illegal, or unenforceable, the validity, legality, and/or enforceability of the remaining provisions will not be affected by that decision, and any invalid, illegal or unenforceable provisions shall be modified or stricken."

In April 2016, plaintiff began working for Dollar General as an hourly-paid assistant manager. Her employment ended in January 2017.

In October 2017, plaintiff's attorney mailed a written notice to the Labor and Workforce Development Agency and defendant pursuant to section 2699.3. Over 65 days passed without the agency responding to plaintiff's notice.

## PROCEEDINGS

In February 2018, plaintiff filed a complaint seeking civil penalties under PAGA for violations of the Labor Code. In May 2018, plaintiff filed a first amended complaint for civil penalties under PAGA based on alleged violations of Labor Code sections 201, 202, 203, 204, 226, subdivision (a), 226.7, 510, 512, 1174, subdivision (d), 1194, 1197, 1197.1, and 1198. In June 2019, the parties stipulated to the transfer of the action from Contra Costa County Superior Court to Kern County Superior Court.

In July 2020, Dollar General filed a motion to compel arbitration and stay the proceeding pending completion of arbitration. The motion was supported by two

4.

declarations. Dollar General argued that plaintiff must individually arbitrate the alleged wage and hour violations that involved her, whether cast as a PAGA claim or otherwise.

In September 2020, after hearing arguments, the superior court denied the motion. The court's minute order stated (1) an employee's right to bring a PAGA representative claim could not be waived, (2) the rule against waivers was not preempted by federal law, and (3) a PAGA claim could not be split into arbitrable individual claims and nonarbitrable representative claims. Dollar General appealed.

In October 2021, the appeal was fully briefed. The parties waived oral argument. In November 2021, this court affirmed the order denying the motion to compel arbitration. Subsequently, the California Supreme Court denied Dollar General's petition for review.

In October 2022, the United States Supreme Court notified this court that it had granted Dollar General's petition for writ of certiorari, vacated our judgment, and remanded the case for further consideration in light of *Viking River*, *supra*, 142 S.Ct. 1906. On November 4, 2022, the mandate and judgment transferring the matter back to this court were received from the United States Supreme Court and we issued an order advising the parties that supplemental briefs were due by November 21, 2022.

After obtaining an extension, the parties filed their supplemental briefs on December 21, 2022. No responding supplement briefs were filed and, by rule, the matter was submitted on January 9, 2023.

**DISCUSSION**

I.      DEFINING TWO TYPES OF CLAIMS AUTHORIZED BY PAGA

Claims authorized by PAGA have been defined and labeled in a variety of ways. The definitions and labels have at times hindered rather than aided the analysis of the legal issues and the establishment of clear precedent. For instance, the United States Supreme Court referred to representative PAGA claims and stated:

5.

"PAGA's unique features have prompted the development of an entire vocabulary unique to the statute, but the details, it seems, are still being worked out. An unfortunate feature of this lexicon is that it tends to use the word "representative" in two distinct ways .…" (*Viking River*, *supra*, 142 S.Ct. at p. 1916.)

In one sense, "PAGA actions are 'representative' in that they are brought by employees acting as representatives—that is, as agents or proxies—of the State." (*Viking River*, *supra*, 142 S.Ct. at p. 1916.) In this sense, every PAGA action is representative "because every PAGA claim is asserted in a representative capacity." (*Ibid*.) In the second sense, the word "representative" is used to distinguish so-called "individual" PAGA claims, which are based on Labor Code violations sustained by the plaintiff, from "representative" PAGA claims, which are based on Labor Code violations involving employees other than the plaintiff. (*Viking River*, *supra*, at p. 1916.) The United States Supreme Court stated it would endeavor to be clear in its use of the term "representative" and would use the phrase " 'individual PAGA claim' to refer to claims based on code violations suffered by the plaintiff." (*Ibid*.) In addition, the court used the term "non-individual claims" without explicitly defining it (*id*. at pp. 1924, 1925), but the opinion readily implies such claims are representative claims pursued by the plaintiff and based on Labor Code violations suffered by employees other than the plaintiff.

The United States Supreme Court's efforts, such as they were, did not achieve the desired clarity. The court's terminology was criticized by Division Two of the Fourth District:

> "What the Supreme Court called, as shorthand, an 'individual PAGA claim' is not actually a PAGA claim at all. It would exist even if PAGA had never been enacted. It is what we are calling, more accurately, an individual Labor Code claim." (*Gavriiloglou v. Prime Healthcare Management, Inc.* (2022) 83 Cal.App.5th 595, 605.)

Here, we attempt to break with the past and the problems of using labels that can be interpreted to mean different things.

First, this opinion uses the term "PAGA claim" to mean a claim for a civil penalty imposed by, or recoverable under, PAGA and pursued by an employee as the representative of the State of California—that is, "as the proxy or agent of the state's labor law enforcement agencies." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986.) As a result, a "PAGA action" usually involves many "PAGA claims" and each claim involves a Labor Code violation and an associated civil penalty. Under PAGA, "civil penalty" is a term of art limited to a monetary recovery that is distributed 75 percent to the Labor and Workforce Development Agency and 25 percent to the employee aggrieved by the Labor Code violation. (*Esparza v. KS Industries, L.P.* (2017) 13 Cal.App.5th 1228, 1234; see § 2699, subd. (i).) Thus, if recovered funds (such as unpaid wages) are not subject to the 75-25 split, they were not recovered on a "PAGA claim."

Second, this opinion divides PAGA claims into two types and designates them "A" and "O." These designations allow us to avoid the imprecision of stating PAGA claims have "individual and representative components" (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 88 (*Kim*)) or describing the two types as "individual and non-individual claims" (*Viking River*, *supra*, 142 S.Ct. at p. 1924). Like the United States Supreme Court, we are reluctant to use the word "representative" to describe a particular type of PAGA claim because "[a]ll PAGA claims are 'representative' actions in the sense that they are brought on the state's behalf." (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 185 (*ZB, N.A.*); see *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 387 (*Iskanian*).)

"Type A" is used for a claim seeking to recover a civil penalty imposed because of a Labor Code violation *suffered by the plaintiff*, which civil penalty, if recovered, will be distributed 75 percent to the Labor and Workforce Development Agency and 25 percent to the plaintiff as the employee aggrieved by the violation pursuant to section 2699, subdivision (i). "A" is a convenient designation because this type of PAGA claim will be

7.

ordered to arbitration if it is covered by an arbitration agreement subject to the FAA. (*Viking River*, *supra*, 142 S.Ct. at p. 1925.)

"Type O" is used for a claim seeking to recover a civil penalty imposed because of a Labor Code violation suffered by an employee other than the plaintiff. Pursuant to section 2699, subdivision (i), that civil penalty, if recovered, will be split 75-25 between Labor and Workforce Development Agency and the employee aggrieved by the violation. This opinion concludes Type O claims, unlike Type A claims, are not subject to arbitration under a predispute arbitration agreement. The "O" is taken from the word "other" and indicates this type of claim involves a Labor Code violation suffered by an employee *other* than the plaintiff.

We emphasize certain aspects of the foregoing definitions by noting that a claim is a PAGA claim (either Type A or Type O) only if, before the enactment of PAGA, the civil penalties sought could be enforced only by the state's labor law enforcement agencies. (*ZB, N.A.*, *supra*, 8 Cal.5th at p. 185.) Furthermore, Type A and Type O claims exclude all claims seeking restitution of unpaid wages or any other remedy that is not a civil penalty subject to the 75-25 split contained in section 2699, subdivision (i).

II.     WAIVER OF REPRESENTATIVE CLAIMS WAS INVALID

In *Iskanian*, *supra*, 59 Cal.4th 348, the California Supreme Court concluded that "an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy." (*Id*. at p. 360.)

The United States Supreme Court addressed the foregoing principle of California law by concluding the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) "preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate. This holding compels reversal in this case. The agreement between Viking and Moriana purported to waive

8.

'representative' PAGA claims. Under *Iskanian*, this provision was invalid if construed as a wholesale waiver of PAGA claims. And under our holding, that aspect of *Iskanian* is not preempted by the FAA, so the agreement remains invalid insofar as it is interpreted in that manner." (*Viking River*, *supra*, 142 S.Ct. at pp. 1924–1925.)

Accordingly, we conclude the rule precluding the waiver of the right to bring a representative action under PAGA is an aspect of *Iskanian* that is not preempted by federal law and remains good law. Accordingly, *Iskanian*'s anti-waiver rule invalidates the provision in Dollar General's arbitration agreement stating that the employee "may not assert any … representative action claims in any arbitration pursuant to the Agreement or in any other forum."

## III.    SEVERING THE INVALID WAIVER OF REPRESENTATIVE CLAIMS

We next consider how the severability clause contained in Dollar General's arbitration agreement applies to the invalid provisions purportedly waiving the employee's right to bring representative actions. Severability also was addressed in *Viking River* because the employer's arbitration agreement contained a similar clause. The United States Supreme Court stated that "the severability clause in the agreement provides that if the waiver provision is invalid in some respect, any 'portion' of the waiver that remains valid must still be 'enforced in arbitration.' Based on this clause, Viking was entitled to enforce the agreement insofar as it mandated arbitration of Moriana's individual PAGA claim. The lower courts refused to do so based on the rule that PAGA actions cannot be divided into individual and non-individual claims. Under our holding, that rule is preempted, so Viking is entitled to compel arbitration of Moriana's individual claim." (*Viking River*, *supra*, 142 S.Ct. at p. 1925.)

Thus, *Viking River* demonstrates that an invalid waiver of representative claims may be severed from the remainder of an arbitration agreement. Pursuant to the severability clause in Dollar General's arbitration agreement, we strike (i.e., sever) the

9.

invalid part of the agreement stating plaintiff may not assert any representative action claims in arbitration or in any other forum.

## IV. INTERPRETING THE REMAINDER OF THE ARBITRATION AGREEMENT

Having struck that language from the agreement, we consider whether the Type A or Type O claims being pursued by plaintiff fall within the scope of the parties' agreement to arbitrate. Dollar General's arbitration provision is broadly worded, covering any legal claims or disputes that the employee may have against Dollar General arising out of the employee's employment with Dollar General, "with the exception of certain excluded claims described below."

On the first issue of contract interpretation, we concluded the PAGA claims are not among the "excluded claims described below" because the waiver of representative action claims has been stricken. In other words, with the elimination of that waiver, the PAGA claims do not qualify as "excluded claims described below."

The second issue of contract interpretation involves the meaning of the surviving contractual provisions, which includes the language requiring arbitration of disputes arising out of the employee's employment. That wording plainly covers the Type A claims because the Labor Code violations allegedly suffered by plaintiff occurred as a result of her employment and could not have occurred if she had not been employed by Dollar General. (See *Viking River*, *supra*, 142 S.Ct. at p. 1919, fn. 4 [claims arose out of the contractual relationship between the employer and employee].) In contrast, the agreement to arbitrate does not cover the Type O claims because those claims do not arise out of plaintiff's employment with Dollar General. Instead, the Type O claims arise out of other employee's employment with Dollar General.

To summarize, we interpret the arbitration provision as requiring arbitration of only the Type A claims being pursued by plaintiff.

## V. TYPE A CLAIMS MUST BE SENT TO ARBITRATION

Following the analysis adopted in *Viking River*, we consider whether the agreement to arbitrate Type A claims is enforceable. The answer is "yes," based on the United States Supreme Court's conclusion that under the FAA the employer was entitled to enforce the arbitration agreement "insofar as it mandated arbitration of Moriana's individual PAGA claim." (*Viking River*, *supra*, 142 S.Ct. at p. 1925.) The United States Supreme Court noted that the lower courts had refused to require arbitration of that claim "based on the rule that PAGA actions cannot be divided into individual and non-individual claims. Under our holding, that rule is preempted, so [the employer] is entitled to compel arbitration of Moriana's individual claim." (*Ibid*.)

In this case, plaintiff's Type A claims are the equivalent of what the court described as "Moriana's individual PAGA claims" in that both seek civil penalties for Labor Code violations suffered by Moriana or plaintiff, not violations suffered by other aggrieved employees. Under the supremacy clause,[2] this court is bound by the rule of law established in *Viking River*. Consequently, Dollar General is entitled to compel arbitration of plaintiff's Type A claims.

## VI. TYPE O CLAIMS NEED NOT BE DISMISSED

In part IV., *ante*, we interpreted the arbitration agreement and concluded it does not cover plaintiff's Type O claims. Because arbitration is strictly a matter of consent (*Viking River*, *supra*, 142 S.Ct. at p. 1911; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236), Dollar General's motion to compel arbitration must be denied as to plaintiff's Type O claims. This conclusion presents us with the following question: What becomes of the Type O claims? Plaintiff

---

[2]    The laws of the United States "shall be the supreme Law of the Land," notwithstanding anything to the contrary in the constitution or laws of any state. (U.S. Const., art. VI, cl. 2.)

contends she has the right to pursue those claims in court. Dollar General contends the Type O claims must be dismissed, like the dismissal ordered in *Viking River*.

    A.    <u>PAGA Standing</u>

In *Viking River*, after the United States Supreme Court concluded the employer was entitled to compel arbitration of the Type A claims, it addressed "what the lower courts should have done with Moriana's non-individual claims"—that is, her Type O claims. (*Viking River*, *supra*, 142 S.Ct. at p. 1925.) The court referred to PAGA's standing requirement, cited subdivisions (a) and (c) of section 2699, and stated:

> "When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit. See *Kim*, 9 Cal.5th at 90, 459 P.3d, at 1133 ('PAGA's standing requirement was meant to be a departure from the "general public" ... standing originally allowed' under other California statutes). As a result, Moriana lacks statutory standing to continue to maintain her [Type O] claims in court, and the correct course is to dismiss [those] claims." (*Viking River*, *supra*, 142 S.Ct. at p. 1925.)

Initially, we note that a federal court's interpretation of California law is not binding. (*Roe v. Hesperia Unified School District* (2022) 85 Cal.App.5th 13, 27, fn. 5.) We also note the California Supreme Court has yet to decide the question.[3]

Our analysis of the standing question begins with the relevant statutory text. Subdivision (a) of section 2699 provides in full:

---

[3]    In *Adolph v. Uber Technologies, Inc.* (Apr. 11, 2022, G059860) [nonpub. opn.] [2022 WL 1073583, 2022 Cal.App.Unpub. Lexis 2170], review granted (July 20, 2022, S274671), the California Supreme Court granted review to consider whether an aggrieved employee who has been compelled to arbitrate Type A claims maintains statutory standing to pursue Type O claims in court or in any other forum the parties agree is suitable. (*Adolph v. Uber Technologies, Inc.* (2022) (Aug. 1, 2022, S274671) [2022 Cal. Lexis 5021].) In November 2022, the parties had fully briefed the matter, the most recent amicus curiae brief was filed on January 13, 2023, and oral argument has not been scheduled. Thus, it seems unlikely that the California Supreme Court will issue a decision before late summer or early autumn.

"Notwithstanding any other provision of law, any provision of this code that provides for a *civil penalty* to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a *civil action* brought by an *aggrieved employee* on behalf of *himself or herself and other current or former employees* pursuant to the procedures specified in Section 2699.3." (Italics added.)

The term "this code" refers to the Labor Code. Subdivision (c) of section 2699 defines the term " 'aggrieved employee' " to mean "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Our Supreme Court has interpreted section 2699 as having "only two requirements for PAGA standing." (*Kim*, *supra*, 9 Cal.5th at p. 83.) "The plaintiff must be an aggrieved employee, that is, someone 'who was employed by the alleged violator' and 'against whom one or more of the alleged violations was committed.' (§ 2699(c).)" (*Kim*, at pp. 83–84.) In *Kim*, the employer argued a PAGA plaintiff is no longer "aggrieved" after he or she settles or otherwise resolves individual *non-PAGA* claims for relief involving the same Labor Code violations for which civil penalties are sought under PAGA. (*Kim*, at p. 84.) The court rejected this argument, stating that, "true to PAGA's remedial purpose, the Legislature conferred fairly broad standing on all plaintiffs who were employed by the violator and subjected to at least one alleged violation." (*Kim*, at p. 91.)

Here, we conclude plaintiff satisfied the two requirements for PAGA standing because she was employed by Dollar General and was subjected to at least one of the Labor Code violations initially alleged in her pleading. Stated another way, a plaintiff's PAGA standing does not evaporate when an employer chooses to enforce an arbitration agreement. This interpretation of the term "aggrieved employee" is consistent with, rather than contrary to, PAGA's remedial purpose, which PAGA achieves by deputizing employees to pursue civil penalties on the state's behalf. (*Kim*, *supra*, 9 Cal.5th at pp.

13.

86–87, 91.)  Revoking an employee's standing as to Type O claims would "severely curtail[] PAGA's availability to police Labor Code violations."  (*Ibid*.)

Having determined that plaintiff has satisfied PAGA's standing requirements, we next consider whether California's rule against splitting a cause of action bars plaintiff from pursuing the Type O claims in court once the Type A claims are sent to arbitration.

B.     Splitting PAGA Claims

California has a rule against splitting a cause of action.  (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681(*Crowley*); see generally, 1A Cal.Jur.3d (2022) Actions, §§ 85–99, pp. 148–163 [splitting causes of action].)  The rule's conceptual foundation is California's long-followed primary right theory of pleading.  (*Crowley*, *supra*, at p. 681.)  Under that theory, "a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty.  [Citation.]  The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.  [Citation.]  A pleading that states the violation of one primary right in two causes of action contravenes the rule against 'splitting' a cause of action."  (*Ibid*.)  The rule against splitting a cause of action "is invoked most often when a plaintiff attempts to divide a primary right and enforce it in two suits."  (*Id*. at p. 682.)  The prohibited division can occur in judicial or arbitral fora.  (*Zakaryan v. The Men's Warehouse, Inc.* (2019) 33 Cal.App.5th 659, disapproved on another ground in *ZB, N.A., supra,* 8 Cal.5th at p. 196, fn. 8.)

In *Kim*, the court stated:  "Appellate courts have rejected efforts to split PAGA claims into individual and representative components."  (*Kim*, *supra*, 9 Cal.5th at p. 88.)  In *Viking River*, the United States Supreme Court described *Kim* as "noting that based on *Iskanian*, California courts have uniformly 'rejected efforts to split PAGA claims into individual and representative components.' "  (*Viking River*, *supra*, 142 S.Ct. at p. 1917.)

The rule against splitting a cause of action apparently was the basis for the decisions of the trial court and Court of Appeal in *Viking River* not to enforce arbitration of Moriana's Type A claims. The United States Supreme Court stated: "The lower courts refused to [enforce arbitration of Moriana's individual PAGA claim] based on the rule that PAGA actions cannot be divided into individual and non-individual claims." (*Viking River*, *supra*, 142 S.Ct. at p. 1925.) Plugging our defined terms into this statement, the United States Supreme Court concluded (1) there is a rule of California law that prohibits splitting a PAGA action into Type A and Type O claims, (2) federal law preempts such a rule insofar as the rule would prevent the arbitration of Type A claims, and (3) what is left of the rule against splitting after federal preemption prevents the pursuit of Type O claims in court.

We predict that the California Supreme Court will conclude that California law does not prohibit an aggrieved employee from pursuing Type O claims in court once the Type O claims are separated from the Type A claims ordered to arbitration. The reason for this prediction is simple—it is the interpretation of PAGA that best effectuates the statute's purpose, which is "to ensure effective code enforcement." (*Kim*, *supra*, 9 Cal.5th at p. 87; see *Cavey v. Tualla* (2021) 69 Cal.App.5th 310, 337 [a court's primary goal is to adopt the interpretation that best effectuates the legislative intent or purpose].)

Another reason for our prediction is that the principles underlying California's general rule against splitting a cause of action do not identify Type A claims and Type O claims as being based on the same "primary right." A Type A claim is based on Labor Code violations suffered by the plaintiff employee and Type O claims are based on Labor Code violations suffered by employees other than the plaintiff. The difference in the harms underlying each type of claim means different primary rights are involved. Consequently, notwithstanding the complaint's reference to one cause of action for civil penalties under PAGA, there is no single cause of action being split when Type A claims

15.

are pursued in arbitration and civil penalties for violations suffered by other employees are pursued in court.

## DISPOSITION

The order denying the motion to compel arbitration judgment is reversed in part and affirmed in part. The order is affirmed as to the Type O claims being pursued by plaintiff. The order is reversed as to plaintiff's Type A claims and the matter is remanded with directions that the trial court enter a new order requiring plaintiff to arbitrate the Type A claims.

In the interest of justice, no party shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TRICIA GALARSA, | F082404 |
| Plaintiff and Respondent, | (Super. Ct. No. BCV-19-102504) |
| v. | **ORDER MODIFYING OPINION, GRANTING PUBLICATION REQUEST AND DENYING REHEARING [NO CHANGE IN JUDGMENT]** |
| DOLGEN CALIFORNIA, LLC, | |
| Defendant and Appellant. | |

THE COURT:

It is ordered that the opinion filed herein on February 2, 2023, be modified as follows:

1.     On page 5, at the end of the fourth full paragraph, "on January 9, 2023" is deleted and replaced with "in January 2023" so the sentence now reads:

> No responding supplement briefs were filed and, by rule, the matter was submitted in January 2023.

2.     On page 8, the first sentence of the fourth full paragraph "Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.)" is deleted and replaced with "FAA" so the sentence now reads:

> The United States Supreme Court addressed the foregoing principle of California law by concluding the FAA "preempts the rule of *Iskanian*

insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate."

3. On page 9, "as to all PAGA claims" is added to the end of the last sentence of the first full paragraph so the sentence now reads:

Accordingly, *Iskanian*'s anti-waiver rule invalidates the provision in Dollar General's arbitration agreement stating that the employee "may not assert any … representative action claims in any arbitration pursuant to the Agreement or in any other forum" as to all PAGA claims.

4. On page 12, the following sentence is added to the end of footnote 3:

Although this opinion's determination of what becomes of the Type O claims will be superseded by our Supreme Court's decision, we have granted a request for publication to provide guiding precedent for superior courts pending the decision in *Adolph*.

There is no change in the judgment.

Respondent's petition for rehearing filed on February 21, 2023, is hereby denied.

As the nonpublished opinion filed on February 2, 2023, in this matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

FRANSON, Acting P. J.

WE CONCUR:

PEÑA, J.

SNAUFFER, J.

2.