Filed 2/11/19; Certified for Publication 2/27/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| DAVID MOORER, | B282631 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC578016) |
| v. | |
| NOBLE L.A. EVENTS, INC., | |
| Defendant and Respondent. | |

APPEAL from the judgment of the Superior Court of Los Angeles County, Samantha P. Jessner, Judge.  Affirmed.

Pedersen Law, Neil Pedersen and Jamie Gottschalk-Hall for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

_____

David Moorer appeals from the March 23, 2017 order denying his request for entry of a default judgment against Noble L.A. Events, Inc. (Noble), and dismissing the case. The trial court denied Moorer's request because Moorer refused to comply with the court's order to distribute 25 percent of the penalties to be allocated under the Labor Code Private Attorney General Act of 2004 (Lab. Code, § 2698 et seq. (PAGA))[1] to the 23 aggrieved employees in a pro rata amount. Instead, Moorer allocated the entire 25 percent to himself. On appeal, Moorer contends a PAGA action is a qui tam action, and therefore, 25 percent of the civil penalties should be distributed to the aggrieved employee who brought the claim. Moorer's position is contrary to the California Supreme Court's rulings interpreting PAGA. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

From August 18, 2013 to late December 2014, Moorer was employed as a full-time security guard and "lobby ambassador" by Noble, which provides security services to other companies. He and other employees provided security services to Apex, The Theatre at Ace Hotel (Ace), and Black Entertainment Television, LLC (BET). On January 14, 2015 Moorer sent notices under PAGA to Noble, Apex, Ace, BET, and the Labor and Workforce Development Agency (LWDA), alleging violations of the Labor Code and Industrial Welfare Commission (IWC) wage order No. 4-2001 (Cal. Code Regs., tit. 8, § 11040.).

---

[1] Unless otherwise noted, further statutory references are to the Labor Code.

2

On April 7, 2015 Moorer filed a complaint, as an individual and on behalf of all aggrieved employees, against Noble, Apex, Ace, and BET, alleging individual wage and hour and representative PAGA claims for violations of the Labor Code and IWC wage order No. 4. Noble filed an answer on June 24, 2015. On August 5, 2015 Moorer voluntarily dismissed Apex, Ace, and BET without prejudice.

Noble failed to respond to discovery that Moorer had served in February 2016. On March 24, 2016 Noble's counsel filed an ex parte application to be relieved as counsel. The trial court granted the motion on March 25, and set an April 5 hearing on an order to show cause to strike Noble's answer "if new counsel has not been retained." (Capitalization omitted.)

At the hearing on April 5, 2016, the trial court struck Noble's answer and deemed Noble to be in default because it had not retained new counsel and, as a corporation, Noble was unable to represent itself. The trial court directed Moorer to file a first amended complaint because the complaint did not allege specific damage amounts owed by Noble to support entry of a judgment on Moorer's wage and hour claims, as required by Code of Civil Procedure section 425.10, subdivision (a)(2). The court ordered Moorer to submit a default judgment package no later than June 10. The court set a June 21 hearing for an order to show cause regarding entry of a default judgment against Noble.

On April 22, 2016 Moorer filed a first amended complaint against Noble, alleging individual and representative PAGA claims for failure to provide and maintain accurate itemized wage statements and records (§§ 226, subd. (a), 1174 & 1198), failure to provide meal breaks and rest periods (§ 226.7), and failure to pay Moorer his wages upon termination (§ 203). Moorer also alleged

3

Noble engaged in unlawful business practices in violation of Business and Professions Code section 17200 et seq.

On July 25, 2016 the court clerk entered a default against Noble on the first amended complaint. On the same day Moorer submitted a request for entry of a default judgment in the amount of $679,374.52, including $594,550.00 in PAGA penalties, $9,513.59 in penalties for Moorer's individual claims, $8,675.34 in costs, and $66,635.59 in attorneys' fees. The civil penalties under PAGA in the proposed judgment were calculated based on wage violations for 23 aggrieved employees during the period from April 7, 2014 to April 7, 2015.

The trial court rejected Moorer's first three requests for entry of default judgment because of clerical errors in the proposed judgments. At the January 31, 2017 hearing the court denied a later request by Moorer because the proposed judgment "fail[ed] to account for the distribution requirements for PAGA penalties." Specifically, as the court explained, "[Moorer's] proposed judgment seeks to give all penalties to [Moorer] making no reference to the 75% of PAGA penalties owed to LWDA. [¶] Furthermore, the judgment must also distribute the remaining 25% of the PAGA penalties to each of the 23 aggrieved employees, not just [Moorer]." According to Moorer's counsel, at the January 31, 2017 hearing, the trial court continued the hearing to March 7, 2017, and stated Moorer "had 'one last time' to submit a correct default judgment package," but "did not indicate what measures it would take should it deny" the request.[2]

---

[2] Moorer did not include the reporter's transcript of the January 31, 2017 hearing or a settled statement as part of the appellate record. (See Cal. Rules of Court, rules 8.120(b), 8.121(b)(1)(C), 8.130, 8.137.) Similarly, the record does not include any information about whether a hearing took place on

4

On March 23, 2017 the trial court held another hearing on Moorer's request for entry of a default judgment. On that date Moorer filed a brief in support of his request. Moorer admitted in his brief the revised proposed judgment was only "in partial compliance" with the trial court's January 31, 2017 ruling in that the judgment allocated penalties to the LWDA, but not other aggrieved employees. He acknowledged the trial court was correct "the LWDA is entitled to 75% of all PAGA penalties awarded." But Moorer contended the remaining 25 percent of the PAGA penalties should be distributed only to the named plaintiff bringing the PAGA action, not all aggrieved employees.

At the March 23 hearing, the trial court denied Moorer's request for entry of a default judgment against Noble. The trial court explained in its written order: "[Moorer] seeks PAGA penalties in the amount of $594,550.00. [Moorer] has now made about eight attempts to obtain a default judgment against Noble LA. Each time the court denied the relief requested, the court provided plaintiff with specific reasons for the denial. Yet again, [Moorer] has failed to heed the court's direction and follow the law. [This] time around, [Moorer's] proposed judgment allocates the amount of PAGA penalties pursuant to the percentage mandated by Labor Code § 2699(i), but the judgment continues to improperly provide the entire 25% of the PAGA penalties sought to [Moorer] individually, rather than each of the 23 aggrieved employees in a pro-rata amount. [¶] Rather than amend the judgment to comply with the court's order, [Moorer] now argues that the entire PAGA award should be allocated to [Moorer] only, despite clear and unambiguous language from the California

March 7, 2017 and, if a hearing occurred, what transpired at the hearing.

5

Supreme Court:  'The PAGA conforms to these traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but all employees affected by the Labor Code violation.'  (*Iskanian v. CLS Transp. Los Angeles, LLC* (2014) 59 Cal.4th 348, 382 . . .)"  (Italics and boldface omitted.)

The trial court added, "Additionally, allowing [Moorer], whose individual claim amounts to only $9,513.59, to individually and personally recover $148,912.50 in PAGA penalties would run afoul of the purpose of PAGA and makes no sense under the PAGA scheme. . . .  [Citation.]  To award [Moorer] roughly 14 times the amount to which he would be entitled clearly flies in the face of the intent not to benefit private parties."  At the hearing, Moorer's counsel stated Moorer did "not want another opportunity to submit an amended judgment package that compl[ied] with the court's order," and the court dismissed the case.

Moorer timely appealed.[3]

## DISCUSSION

A.    *Standard of Review*

The interpretation of PAGA is an issue of law, which we review de novo.  (*United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082, 1089; *Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1247.)  "Our role in interpreting statutes is to ascertain and effectuate the intended legislative purpose.  [Citations.]  We begin with the text, construing words

---

[3]    The order of dismissal, signed by the trial court and entered by the court clerk, constitutes a judgment under Code of Civil Procedure section 581d.

in their broader statutory context and, where possible, harmonizing provisions concerning the same subject.  [Citations.]  If this contextual reading of the statute's language reveals no ambiguity, we need not refer to extrinsic sources."  (*United Riggers*, at p. 1089; accord, *926 North Ardmore Ave., LLC v. County of Los Angeles* (2017) 3 Cal.5th 319, 328.)

B.	*PAGA Civil Penalties Must Be Distributed to All Aggrieved Employees*

In 2003 the Legislature enacted PAGA "to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts."  (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980 (*Arias*); accord, *Mendoza v. Nordstrom, Inc.* (2017) 2 Cal.5th 1074, 1079, fn. 5 ["PAGA authorizes an aggrieved employee to bring suit for specified Labor Code violations in a representative capacity and obtain civil penalties, which are then shared between the affected employees and the state."].)  An "'aggrieved employee'" is "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."  (§ 2699, subd. (c); see *Donohue v. AMN Services, LLC* (2018) 29 Cal.App.5th 1068, 1099.)  Section 2699, subdivision (i), provides that "civil penalties recovered by aggrieved employees shall be distributed as follows: 75 percent to the [LWDA] . . . and 25 percent to the aggrieved employees."

Moorer contends that because a PAGA action is a type of qui tam action, under which the private citizen enforces a statute on behalf of the government, the 25 percent of the civil penalties not allocated to the government should be distributed to the

7

aggrieved employee who brings the PAGA action. Although Moorer asserts policy arguments for why this approach would serve the goals of PAGA, the Supreme Court in *Iskanian v. CLS Transportation Los Angeles, LLC, supra*, 59 Cal.4th 348 (*Iskanian*) held otherwise. As the Supreme Court explained, a PAGA representative action "conforms to the traditional criteria" for bringing a qui tam action, "except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation." (*Iskanian*, at p. 382; see *Williams v. Superior Court* (2017) 3 Cal.5th 531, 545 (*Williams*) [PAGA "deputiz[es] employees harmed by labor violations to sue on behalf of the state and collect penalties, to be shared with the state and other affected employees"].)[4]

Allocation of 25 percent to all aggrieved employees is consistent with the statutory scheme under which the judgment binds all aggrieved employees, including nonparties. (*Iskanian, supra*, 59 Cal.4th at p. 381 ["'Because an aggrieved employee's

---

[4]     Moorer relies on *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1195, *Cunningham v. Leslie's Poolmart, Inc.* (C.D.Cal., June 25, 2013, No. CV 13-2122 CAS (CWx)) 2013 U.S.Dist. Lexis 90256 *1, *17, and *Admona v. University of Phoenix, Inc.* (2012) 913 F.Supp.2d 964, 978, footnote 5, to support his contention 25 percent of the penalties recovered in a PAGA action are paid to the named plaintiff. (See *Amaral*, at p. 1195 ["If an employee successfully recovers an award of civil penalties, PAGA requires that 75 percent of the recovery be paid to the [LWDA], with the remaining 25 percent going to the employee."].) But these cases predated the Supreme Court's *Iskanian* and *Williams* decisions and cite only to the language in section 2699, subdivision (i). (See, e.g., *Cunningham, supra*, at p. *17, fn. 1 ["the [c]ourt has not been presented with any case law or other authority directly addressing how penalties recovered by an employee are to be distributed . . . ."].)

action under the [PAGA] functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government.'"]; accord, *Arias, supra*, 46 Cal.4th at p. 986.)

Moreover, "'an action to recover civil penalties "is fundamentally a law enforcement action designed to protect the public and not benefit private parties."'" (*Iskanian, supra*, 59 Cal.4th at p. 381; accord, *Arias, supra*, 46 Cal.4th at p. 986.) As the trial court observed, allowing Moorer to recover $148,912.50 in civil penalties, although his individual claims only amounted to $9,513.59, would be contrary to PAGA's intent to protect the public, not to benefit private parties.

C.    *The Trial Court Did Not Err in Dismissing the Case*

Moorer contends the trial court erred in dismissing the case because he was unable to distribute 25 percent of the penalties to the other aggrieved employees given that Noble never provided him with a contact list for the other employees. However, Moorer's right to discovery would not end with the entry of a default judgment. Rather, Moorer could have complied with the trial court's order, then obtained discovery from Noble as a judgment creditor. "A judgment creditor may conduct discovery directly against the judgment debtor by means of a judgment debtor examination ([Code of Civ. Proc.,] § 708.110), written interrogatories (§ 708.020), and requests for production of documents (§ 708.030)." (*SCC Acquisitions, Inc. v. Superior Court* (2015) 243 Cal.App.4th 741, 751-752 (*SCC Acquisitions, Inc.*); accord, *Li v. Yan* (2016) 247 Cal.App.4th 56, 65 ["a judgment creditor may obtain documents from a judgment debtor

9

either by subpoena duces tecum or by a discovery request for production"].)

Code of Civil Procedure section 708.030, subdivision (a), allows a judgment creditor to obtain information about a third party, provided the document "is in the possession, custody, or control" of the judgment debtor and "the demand requests information to aid in enforcement of the money judgment." (See *SCC Acquisitions, Inc., supra*, 243 Cal.App.4th at pp. 752-753.) Moreover, Moorer can obtain the other aggrieved employees' contact information pursuant to a protective order, which would safeguard their privacy rights.[5] (*Id.* at p. 755.)

Moorer also argues allowing the dismissal to stand would permit an employer to defeat an employee's ability to obtain a judgment by simply not defending the action. But this is not such a case. The trial court dismissed the case after allowing Moorer approximately eight attempts to obtain a default judgment against Noble. At the January 31 hearing, the court informed Moorer that he had "one last time" to submit a correct default judgment package. Moorer refused to follow the court's order, acknowledging the revised proposed judgment was only "in partial compliance" with the January 31 order. At the March 23, 2017 hearing, the trial court dismissed the case only after Moorer's counsel stated he did not want "another opportunity to submit an amended judgment package that compl[ied] with the court's order." Thus, the order of dismissal was the result of Moorer's decision not to submit a default judgment in compliance

---

[5] The superior court could also follow the notice procedure we set forth in *Belaire-West Landscape, Inc. v. Superior Court* (2007) 149 Cal.App.4th 554, 562, under which the employer would provide notice to nonparty employees and an opportunity for them to opt out from disclosure of their contact information.

with the trial court's order, not Noble's failure to defend the action.[6]

## DISPOSITION

The dismissal order is affirmed.

FEUER, J.

WE CONCUR:

PERLUSS, P. J.                    ZELON, J.

---

[6] Counsel for Moorer at oral argument stated that Moorer made the purposeful decision not to submit a judgment allocating 25 percent of the PAGA penalties to all aggrieved employees in order to preserve the issue for appeal, not out of intransigence. Although dismissal of the action will mean the LWDA and aggrieved employees will not recover any PAGA penalties in this lawsuit, they would not be barred by issue preclusion from bringing a future PAGA claim because the dismissal does not "conclusively resolve[] an issue actually litigated and determined in the first action." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824; accord, *Samara v. Matar* (2018) 5 Cal.5th 322, 327 [issue preclusion prevents "'relitigation of previously decided issues'"].)  Neither would claim preclusion apply because the LWDA and other aggrieved employees were not parties or in privity with parties to this lawsuit.  (*Samara*, at p. 327; *DKN Holdings LLC*, at p. 824.)  As discussed, the LWDA and aggrieved employees would have been bound had a judgment been entered on Moorer's PAGA claims.  (*Iskanian, supra*, 59 Cal.4th at p. 381.)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| DAVID MOORER, | B282631 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC578016) |
| v. | |
| NOBLE LA EVENTS INC., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | NO CHANGE IN JUDGMENT |

THE COURT:*

    The opinion in the above-entitled matter filed on February 11, 2019 was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

---

*    PERLUSS, P. J.    ZELON, J.    FEUER, J.