Filed 8/13/19

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LORENA MEJIA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MERCHANTS BUILDING<br>MAINTENANCE, LLC, et al.,<br><br>    Defendants and Appellants. | D074620<br><br><br>(Super. Ct. No. 37-2018-00002352-<br>CU-OE-CTL) |

APPEAL from an order of the Superior Court of San Diego County,

Joel R. Wohlfeil, Judge.  Affirmed.

Musick, Peeler & Garrett, Cheryl A. Orr and Elaine M. Vukadinovich for

Defendants and Appellants.

Aegis Law Firm, Kashif Haque, Samuel A. Wong, Jessica L. Campbell and Ali S.

Carlsen for Plaintiff and Respondent.

I.

INTRODUCTION

Defendants Merchants Building Maintenance, LLC and Merchants Building

Maintenance Company (the MBM defendants) appeal from an order of the trial court

denying their joint motion to compel arbitration. The MBM defendants moved to compel arbitration of a portion of plaintiff Loren Mejia's cause of action brought against them for various violations of the Labor Code under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code,[1] § 2698 et seq.).

Pursuant to PAGA, "an 'aggrieved employee' may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations. (Lab. Code, § 2699, subd. (a).)" (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980 (*Arias*).) A PAGA claim "is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*, which alleges directly or through its agents—either the [Labor and Workforce Development] Agency or aggrieved employees—that the employer has violated the Labor Code." (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 386–387 (*Iskanian*).) In *Iskanian*, the Supreme Court held that individual employees cannot contractually agree to arbitrate or waive any predispute PAGA claims, but they may agree to arbitrate their "individual damages claims." (*Iskanian*, *supra*, at p. 387.)

The MDM defendants moved to compel arbitration of that portion of Mejia's PAGA claim in which she seeks "an amount sufficient to recover underpaid wages" pursuant to section 558. Section 558 provides in relevant part:

> "(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or

---

[1]  Further statutory references are to the Labor Code unless otherwise indicated.

any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

"(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

"(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

"(3) Wages recovered pursuant to this section shall be paid to the affected employee.

"[¶] . . . [¶]

"(d) The civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law." (§558, subds. (a), (d).)

The MBM defendants contend that Mejia's claim to recover the portion of the penalty under section 558 that represents underpaid wages amounts to a claim for individual damages because it seeks "victim-specific relief," given that section 558 provides that any amount recovered representing the amount of underpaid wages are to be directed to "the affected employee." The MBM defendants further contend that because Mejia agreed to arbitrate any individual claim that she may have to her unpaid wages, any claim that she asserts seeking the amount that is sufficient to recover underpaid wages under section 558 must be separated from the remainder of the PAGA

3

claim and sent to arbitration.[2]  The MBM defendants maintain that only that portion of Mejia's claim brought pursuant to section 558 in which she seeks to recover the $50 or $100 per violation per employee civil penalty on behalf of herself and other aggrieved employees may be brought by an individual plaintiff as a representative PAGA claim that is not subject to arbitration.

The question presented in this case has been framed by other courts as a question as to whether a single PAGA claim seeking recovery of the civil penalty provided for in section 558 may be "split" in the way that the MBM defendants suggest.  In other words, may a court split a single PAGA claim so as to require a representative employee to arbitrate that aspect of the claim in which the plaintiff seeks to recover the portion of the penalty that represents the amount sufficient to recover *underpaid wages* where the representative employee has agreed to arbitrate her individual wage claims, while at the same time retain in the judicial forum that aspect of the employee's claim in which the plaintiff seeks to recover the additional $50 or $100 penalties provided for in section 558 for each violation of the wage requirements?  Appellate courts are divided on this question.  (Compare *Esparza v. KS Industries, L.P.* (2017) 13 Cal.App.5th 1228

---

2       Although not entirely clear, the MBM defendants' argument appears to be that Mejia may seek only the amount of unpaid wages that represents her own underpaid wages, and that she cannot bring a claim seeking an amount representing the underpaid wages of other employees, even in an arbitral forum.  Although the MBM defendants do not expressly explain the basis of their position in this regard, we understand the MBM defendants to be contending that the portion of Mejia's claim in which she seeks amounts sufficient to recover the underpaid wages of all affected employees pursuant to section 558 must be limited to a claim for only her own underpaid wages due to the existence of a collective bargaining agreement between the parties that provides that employees agree to resolve their wage and hour claims on an individual basis.

[concluding that claim for unpaid or underpaid wages under section 558 involves "victim-specific relief" and is subject to arbitration where employee has agreed to arbitrate private claims] with *Lawson v. ZB, N.A.* (2017) 18 Cal.App.5th 705, 724 (*Lawson*) [concluding that court may not split a PAGA claim seeking recovery of civil penalties under section 558 in order to send the portion seeking section 558 unpaid or underpaid wages penalties to arbitration because section 558 provides "no private right of action and by its terms is only enforceable by the LWDA"] and *Zakaryan v. The Men's Wearhouse, Inc.* (2019) 33 Cal.App.5th 659, 672 (*Zakaryan*) [concluding that court may not split a PAGA claim seeking recovery of civil penalties under section 558 in order to send the portion seeking section 558 underpaid wages penalties to arbitration because "an individual PAGA plaintiff is at all times acting on behalf of the [Labor and Workforce Development Agency (the Agency)] when seeking underpaid wages as well as the $50/$100 penalty," such that "his pursuit of both remedies 'involv[es] the same parties seek[ing] compensation for the same harm' and thus involves 'the same primary right' "].)[3] The issue is pending before the Supreme Court in *Lawson*, *supra*, review granted Mar. 21, 2018, S246711.

---

[3]    Other cases also agree that a single PAGA claim may not be split into two claims, with only a "portion" of a PAGA claim being sent to arbitration. (See *Williams v. Superior Court* (2015) 237 Cal.App.4th 642, 649 [no authority to support trial court's decision to "split" PAGA claim and send question of whether the plaintiff was an "aggrieved employee" to arbitration; case law instead "suggests that a single representative PAGA claim *cannot* be split into an arbitrable individual claim and a nonarbitrable representative claim"]; *Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665, 676–678 [rejecting defendant's argument that court "should compel arbitration of 'the individual portion of [the plaintiff's] PAGA claim' and stay 'the

We agree with the conclusion of the *Lawson* and *Zakaryan* courts on this question, and conclude that a single PAGA claim seeking to recover section 558 civil penalties may not be "split" between that portion of the claim seeking an "amount sufficient to recover underpaid wages" and that portion of the claim seeking the $50 or $100 per-violation, per-pay-period assessment imposed for each wage violation.[4] The result is that an employee bringing a PAGA claim to recover the civil penalties identified in section 558 may not be compelled to arbitrate that portion of her PAGA claim that seeks an amount sufficient to recover underpaid wages pursuant to that statute, while the rest of the claim that seeks the $50 or $100 per-pay-period per violation portion of the penalty remains in a judicial forum. We therefore affirm the trial court's order denying the MDM defendants' motion to compel arbitration in this case.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

According to the President of Merchants Building Maintenance, LLC, it is "a maintenance company that primarily provides janitorial services." Merchants Building

---

representative portion' pending completion of arbitration"]; *Perez v. U-Haul Co. of California* (2016) 3 Cal.App.5th 408, 420–421 [rejecting contention that "an employer may force an employee to split a PAGA claim into 'individual' and 'representative' components, with each being litigated in a different forum"].)

[4] Although the *Lawson* and *Zakaryan* courts reached the same conclusion that we reach here, they disagreed as to one aspect regarding the allocation of any civil penalties recovered by a PAGA plaintiff. (See *Zakaryan*, *supra*, 33 Cal.App.5th at p. 677 ["We agree with *Lawson*'s central holding but disagree with its subsidiary holding regarding the allocation of the 'civil penalties' recovered"].)

Maintenance Company "operates as a payroll and administrative services company for [Merchants Building Maintenance, LLC]." Mejia alleges that she and other aggrieved individuals were employed by the MBM defendants as nonexempt employees.

Mejia was a union member during her employment with the defendants. In 2016, Merchants Building Maintenance, LLC and Mejia's union entered into a collective bargaining agreement (CBA). The CBA was ratified by the bargaining-unit employees on May 1, 2016. A provision in the CBA requires that bargaining-unit employees resolve their private wage and hour disputes on an "individual basis" by following a mediation and arbitration protocol, which, pursuant to the terms of the CBA, is governed by the Federal Arbitration Act (FAA).

Mejia alleges that the defendants engaged in a number of Labor Code violations. Specifically, according to Mejia, (1) the defendants had a "policy and practice" of failing to provide employees with thirty-minute meal periods or provide compensation in lieu of the meal breaks; (2) the defendants did not permit or authorize Mejia and other employees to take "net 10-minute rest periods for every four hours worked" or provide compensation in lieu of the rest breaks; (3) the defendants did not pay her or other employees "all wages at the legal minimum and/or overtime rate" when the employees were required to work through their meal periods, and thereby failed to pay plaintiff and similar employees "for all hours worked"; (4) the defendants failed to provide her and other employees with "accurate itemized wage statements"; and (5) the defendants failed to timely pay Mejia and other former employees their final wages upon the employees' separation from employment.

7

B. *Procedural background*

Mejia filed a complaint against the MBM defendants asserting a single cause of action, pursuant to PAGA, to address these various Labor Code violations. Specifically, Mejia identifies the following Labor Code provisions as having been violated: sections 226.7 and 512 (failure to provide meal periods); sections 226.7 (failure to provide rest periods); sections 510, 1194, 1194.2, 1197, and 1198 (failure to pay legal minimum wage and/or overtime at the correct rate); sections 226 and 226.3 (failure to provide accurate itemized wage statements); and sections 201, 202, 203, 204, and 210 (failure to timely pay all earned wages owed upon separation from employment).

The MBM defendants moved to compel arbitration of one aspect of Mejia's PAGA claim, and requested a stay of the remaining aspects of Mejia's claim. Specifically, the MBM defendants sought an order compelling Mejia to arbitrate that portion of her PAGA claim in which, according to MBM, she sought "to recover victim-specific relief," i.e., "the unpaid wages that MEJIA claims were due her and which were allegedly unpaid by the MBM [defendants]." The MBM defendants argued that "the recovery available under Labor Code section 558 is unpaid wages and the right of recovery inures solely to the benefit of the employee and not to the State."

The trial court denied the motion to compel arbitration without stating its reasoning.[5]

---

[5] The court did not rule on the related request for a stay of the remaining aspects of Mejia's claim, effectively denying the request.

The MBM defendants filed a timely notice of appeal from the order denying their petition to compel arbitration.

## III.

## DISCUSSION

The MBM defendants challenge the trial court's refusal to order Mejia to arbitrate the portion of Mejia's PAGA claim that seeks to recover "an amount sufficient to recover underpaid wages" pursuant to section 558, subdivision (a). As noted, there is disagreement among courts as to whether that portion of a plaintiff's PAGA claim seeking the civil penalties of the "amount sufficient to recover underpaid wages" that are made available in section 558 may be split from the remainder of a plaintiff's PAGA claim for other civil penalties and sent to an arbitral forum. We now consider the issue.

A. *Relevant legal standards*

1. *Standards on review from the court's ruling on the motion to compel arbitration*

We agree with the *Zakaryan* court that the "arbitrability of a portion of a PAGA claim presents a legal question that lies at the intersection of California labor law and arbitration law," and that we therefore review the trial court's ruling on this issue de novo. (*Zakaryan*, *supra*, 33 Cal.App.5th at p. 667, citing *Julian v. Glenair, Inc*. (2017) 17 Cal.App.5th 853, 864 (*Julian*) [review is de novo when denial of a motion to compel "relies on a determination of law"].)

2. *Labor law enforcement*

Traditionally, the Labor Code has provided several mechanisms allowing for the enforcement of the substantive protections for employees that are set forth in the Labor Code.

First, for example, an aggrieved employee may pursue a judicial action or administrative action on her own behalf: "[I]f 'an employer fails to pay wages in the amount, time or manner required by contract or by statute, the employee has two principal options. The employee may seek *judicial* relief by filing an ordinary civil action against the employer for breach of contract and/or for the wages prescribed by statute. (§§ 218, 1194.) Or the employee may seek *administrative* relief by filing a wage claim with the commissioner pursuant to a special statutory scheme codified in sections 98 to 98.8." (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1084 (*Reynolds*), abrogated on other grounds in *Martinez v. Combs* (2010) 49 Cal.4th 35.)

Regardless of the legal theory advanced, an employee's recovery for a private cause of action is limited to the amount the Legislature has determined is the appropriate amount to compensate the employee for the injuries that she has suffered, both economic and noneconomic, as a result of the employer's violation or violations. (See *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1109–1113, 1115 [overtime payment and meal and rest break pay recoverable under section 226.7 represents both the economic and "noneconomic injuries employees suffer from being forced to work through rest and meal periods"]; *Villacres v. ABM Industries Inc*. (2010) 189 Cal.App.4th 562, 578 ["Before the PAGA was enacted, an employee could recover

10

damages, reinstatement, and other appropriate relief *but could not collect civil penalties*" (italics added)].)  With respect to administrative relief, an employee may file a wage claim with, and have the claim adjudicated by, the Labor Commissioner.  (§§ 98–98.8; *Reynold*s, *supra*, 36 Cal.4th at p. 1084.)

Second, the Labor Commissioner may initiate proceedings against the employer and seek a variety of remedies.  (See §§ 1193.6 [authorizing action for "unpaid overtime compensation"], 1194.5 [authorizing action for injunctive relief], 217 [authorizing action to recover penalties].)  For example, with respect to violations of the overtime and meal and rest period rules, section 558 specifies the civil penalty that the Labor Commissioner may recover from an employer—i.e., an amount sufficient to recover the wages that were underpaid plus an additional $50 for the first violation against each employee for each pay period, and an additional $100 for any subsequent violation against each employee for each pay period.  (§ 558, subd. (a).)  Upon recovering civil penalties from an employer, the Labor Commissioner is directed to give that portion of the penalty that represents the "[w]ages recovered" under section 558 to the "affected employee" (§ 558, subd. (a)(3)), while the remainder is to go to the Labor and Workforce Development Agency (§ 558, subd. (b); *Iskanian*, *supra*, 59 Cal.4th at p. 378).[6]

---

[6]     Section 558 authorizes "only . . . *the Labor Commissioner* to recover the penalties," and does not provide a private right of action allowing individual employees to seek their unpaid wages as damages.  (*Atempa v. Pedrazzani* (2018) 27 Cal.App.5th 809, 826 (*Atempa*); see *Robles v. Agreserves, Inc*. (E.D. Cal. 2016) 158 F.Supp.3d 952, 1006 [concluding that "there is no private cause of action created by Labor Code § 558" and citing other cases stating the same].)

11

Finally, under the scheme set forth in the Labor Code, a local prosecuting authority may prosecute an employer where the violations of certain provisions of the Labor Code are designated as misdemeanors (see, e.g., §§ 215, 216, 218) or infractions (see, e.g., § 226, subd. (c)).

In 2003, the Legislature created another mechanism for enforcing California's labor laws through the enactment of the PAGA. The Legislature recognized that enforcement authorities had insufficient incentive and resources to sue employers for Labor Code violations. (*Iskanian*, *supra*, 59 Cal.4th at p. 379.) PAGA addressed this problem by deputizing "aggrieved" (§ 2699, subd. (a)) employees as private attorneys general, permitting them to act "as the proxy or agent of the state's labor law enforcement agencies" (*Arias*, *supra*, 46 Cal.4th at p. 986). PAGA does this by authorizing aggrieved employees to bring "civil action[s]" "on behalf of" themselves "and other current or former employees." (§ 2699, subd. (a).) PAGA also establishes a default civil penalty for all Labor Code violations for which a penalty has not already been statutorily provided. (§ 2699, subd. (f).)

A PAGA action is " 'fundamentally a law enforcement action designed to protect the public and not to benefit private parties.' " (*Arias*, *supra*, 46 Cal.4th at p. 986.) An employee may not file her PAGA claim for particular labor law violations until having first provided the agency with the opportunity to investigate and file the claim itself. (§§ 2699, subd. (a), 2699.3 [setting forth procedures for notifying agency].) If the agency elects not to pursue an action itself, the agency is nevertheless legally bound by the outcome of the proceeding to adjudicate the employee's PAGA claim. (*Arias*, *supra*,

12

at pp. 985–986.)  In the same way that an action brought by the agency would be brought on behalf of all aggrieved employees, an aggrieved employee PAGA plaintiff brings her claim on behalf of all other aggrieved employees.  (*Julian*, *supra*, 17 Cal.App.5th at p. 866, fn. 6 [a PAGA plaintiff brings a "representative" claim in two ways—both as a proxy for the state and insofar as the claim "seeks penalties on behalf of other employees"]; *Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 750–751 [a PAGA plaintiff has standing to bring claims for violations so long as any other employee is "aggrieved" by the alleged violation, even if representative plaintiff was not injured by all of the alleged violations].)  Further, the PAGA statute provides that the "civil penalties recovered" are to be divided in a way that favors the agency, in that 75 percent of what is recovered is to go to the agency (to use for enforcement, administration and education) and 25 percent is to go to the "aggrieved employees." (§ 2699, subds. (i), (j).)[7]

" '[E]*very* PAGA action, whether seeking penalties for Labor Code violations as to only one aggrieved employee—the plaintiff bringing the action—or as to other employees as well, is a representative action on behalf of the state.' "  (*Iskanian*, *supra*, 59 Cal.4th at p. 387.)  A PAGA action is thus ultimately founded on a right belonging to

---

[7]    As explained in *Iskanian*, "[a] PAGA representative action is therefore a type of *qui tam* action.  'Traditionally, the requirements for enforcement by a citizen in a qui tam action have been (1) that the statute exacts a penalty; (2) that part of the penalty be paid to the informer; and (3) that, in some way, the informer be authorized to bring suit to recover the penalty.' [Citation.]  The PAGA conforms to these traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation." (*Iskanian*, *supra*, 59 Cal.4th at p. 382, italics added.)

the state, which—though not named in the action—is the real party in interest. (*Iskanian*, *supra*, at p. 387.)  PAGA does not create any new substantive rights for the benefit of employees, nor does it create new legal obligations for employers; rather, it "is simply a procedural statute allowing an aggrieved employee to recover *civil penalties*— for Labor Code violations—*that otherwise would be sought by state labor law enforcement agencies*."  (*Amalgamated Transit Union, Local 1756, AFL–CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003, italics added.)

       3.   *The intersection between arbitration law and PAGA*

Private parties, including employers and employees, may contractually agree to resolve their disputes through arbitration.  (*Rent-A-Center, W., Inc. v. Jackson* (2010) 561 U.S. 63, 67 ["arbitration is a matter of contract"].)  Such contracts are enforceable as a matter of federal law under the Federal Arbitration Act (FAA).  (9 U.S.C. § 2 ["A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"]; *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 344 ["The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'  [Citations]"].)

In *Iskanian*, *supra*, 59 Cal.4th 348, the California Supreme Court explained that an employee cannot contractually agree to give up a potential PAGA claim against his or

14

her employer.  (*Iskanian*, *supra*, at pp. 378–392.)  The court in *Iskanian* declared that PAGA waivers made "before any dispute arises" are unenforceable, given that they "harm the state's interests in enforcing the Labor Code" and thus are contrary to public policy.  (*Iskanian*, at pp. 360–361, 383–384, 388.)  Further, the *Iskanian* court explained that a rule rendering predispute waivers of PAGA claims unenforceable does not run afoul of the FAA because the FAA is concerned with "ensur[ing] an efficient forum for the resolution of *private disputes*, whereas a PAGA [claim] is a *dispute between an employer and the state Agency*."  (*Iskanian*, at p. 384, italics added.)  However, an employee's non-PAGA claim or claims for "individual damages" constitutes a private dispute and thus, under the FAA, should be sent to arbitration if the employer and employee have so agreed.  (*Iskanian*, at p. 391.)

B.  *Analysis*

Whether the trial court erred in denying the MBM defendants' motion to compel Mejia to arbitrate turns on whether a PAGA claim that seeks to recover the remedies available to the Labor Commissions pursuant to section 558 may (or should) be split into two separate claims based on the two aspects of the relief that is recoverable pursuant to section 558—i.e., a claim for the $50 and $100 per-pay-period penalties and a claim for that portion of the penalty that represents an amount sufficient to recover underpaid wages.  Under the MBM defendants' theory, Mejia is seeking "victim-specific recovery for herself" when she requests that portion of the section 558 penalty that constitutes "an amount sufficient to recover underpaid wages."  The MBM defendants contend that for this reason, this aspect of Mejia's claim should be split from the remainder of her section

15

558 PAGA claim and sent to arbitration while the $50 and $100 portion of the penalties sought for all aggrieved employees would constitute a separate claim for a collective remedy and could remain in court.[8] We agree with the *Lawson* and *Zakaryan* courts that the claim splitting that the MBM defendants seek is impermissible.

First, this court has already concluded that the "civil penalty" provided for in section 558 is *single* civil penalty, despite the fact that the penalty comprises two parts: "We disagree [with the defendant's position] that section 558 provides for a civil penalty of $50 or $100 only, and that it clearly excludes underpaid wages from the civil penalty [and provides for them as restitution for unpaid wages instead].  In our view, the language of section 558, subdivision (a), is more reasonably construed as providing a civil penalty that *consists of both the $50 or $100 penalty amount and any underpaid wages . . . .*"  (*Thurman v. Bayshore Transit Management, Inc*. (2012) 203 Cal.App.4th 1112, 1145 (*Thurman*), italics added.)  Although *Thurman* was decided before *Iskanian*, and the *Thurman* court was not considering questions related to the intersection of PAGA and arbitration governed by the FAA, the *Thurman* court was considering a question relevant to the issue here:  In enacting section 558, did the Legislature intend for both the amount sufficient to cover underpaid wages and the $50 or $100 per violation per-pay-period assessment to be treated as a single civil penalty recoverable by

---

[8]     Again, throughout their briefing, the MBM defendants repeatedly refer to Mejia as seeking her own "underpaid wages," and not any amounts representing the underpaid wages of other employees.  Although not expressly stated, we assume that this is based on the existence of the CBA, which limits employees to bringing only individual claims for wage relief.

16

the Labor Commissioner and thus recoverable by an aggrieved employee in a PAGA action?  The *Thurman* court answered this question in the affirmative based on the plain meaning of the words of the statute:  "[T]he civil penalty [section 558] specifies *consists of both* an assessment of $50 for initial violations or $100 for subsequent violations *and* an amount sufficient to recover underpaid wages."  (*Thurman*, *supra*, at p. 1147, italics added.)

MBM has provided us with no reason to deviate from the *Thurman* court's conclusion that it is the monetary assessments together with the "amount sufficient to recover underpaid wages" provided for in section 558 that comprises a single civil penalty.  Section 558, by its very terms, provides for the imposition of a civil penalty that consists of two components—"fifty dollars ($50) for each underpaid employee for each pay period . . . *in addition* to an amount sufficient to recover underpaid wages," or, for subsequent violations, "one hundred dollars ($100) for each underpaid employee for each pay period . . . *in addition to* an amount sufficient to recover underpaid wages."  (§ 588, subd. (a), italics added.)[9]  The fact that one of these two components is not a

9      Further, we are not convinced that the language of a separate Labor Code provision, section 1197.1, subdivision (c), is helpful in understanding what the Legislature meant when it defined the "civil penalty" in section 558, subdivision (a) as involving both the $50 or $100 per violation amount as well as an amount equal to the underpaid wages.  Section 1197.1, subdivision (c) provides for the posting of a bond by any petitioner who seeks a writ of mandate from a finding by the Labor Commissioner that an assessment of a "civil penalty, wages, liquidated damages, and any applicable penalties imposed pursuant to Section 203" (§ 1197.1, subd. (c)(1)) is due.  (See § 1197.1, subd. (c)(1), (c)(2), (c)(3).)  Subdivision (c)(3) provides in relevant portion: "As a condition to filing a petition for a writ of mandate, the petitioner seeking the writ shall first post a bond with the Labor Commissioner equal to the total amount of any

17

predetermined amount, but, rather, is an amount directly proportional to the scope of

wage violation at issue, does not alter the fact that the two components jointly comprise a

single civil penalty. In this way, section 588, subdivision (a)'s reference to the "amount

sufficient to recover underpaid wages" provides a method of measurement for

---

minimum wages, liquidated damages, and overtime compensation that are due and
owing as determined pursuant to subdivision (b) of Section 558, as specified in the
citation being challenged. The bond amount shall not include amounts for penalties."
Although on a first reading one might view this provision as distinguishing between
"minimum wages" that are due pursuant to section 558 and the "penalties" that might be
due under section 558, we think such a reading would be inaccurate. Specifically,
subdivision (c)(3) of section 1197.1 refers to *subdivision (b)* or section 558, which does
not define or otherwise refer to the "civil penalty" set forth in subdivision (a) of section
558. Rather, subdivision (b) of section 558 provides:

> "If upon inspection or investigation the Labor Commissioner
> determines that a person had paid or caused to be paid a wage for
> overtime work in violation of any provision of this chapter, any
> provision regulating hours and days of work in any order of the
> Industrial Welfare Commission, or any applicable local overtime
> law, the Labor Commissioner may issue a citation. The procedures
> for issuing, contesting, and enforcing judgments for citations or civil
> penalties issued by the Labor Commissioner for a violation of this
> chapter shall be the same as those set out in Section 1197.1."

Thus, section 1197.1, subdivision (c)(3)'s reference to section 558 is highlighting
the authorization provided to the Labor Commissioner in that section to "issue a citation"
for violations of that chapter—a chapter that sets forth rules regarding workweeks,
overtime pay and meal periods—similar to the authorization in section 1197.1,
subdivision (b) that permits the Labor Commissioner to issue citations for civil penalties,
liquidated damages, and other applicable penalties imposed pursuant to section 203. The
fact that the Legislature decided not to require that the bond amount provided for in
section 1197.1, subdivision (c)(3) include "amounts for penalties" does not provide any
insight as to whether the Legislature intended for those "penalties" to comprise the $50
or $100 per-pay-period penalty amount *plus* an amount equal to underpaid wages or the
$50 or 100 per-pay-period penalty amounts, alone.

18

determining the amount of the civil penalty that is to be imposed, and *not* a reference to the recovery of the individual employees' actual unpaid wages.[10]

Again, the Labor Commissioner is the party entitled to recover the civil penalty set forth in section 558, subdivision (a); individual employees are not granted a private right of action to obtain section 558 penalties. (See, e.g., *Thurman*, *supra*, 203 Cal.App.4th at p. 1148 ["the Legislature . . . authorized the LWDA to recover underpaid wages on behalf employees in the form of a civil penalty under section 558"]; *Atempa*, *supra*, 27 Cal.App.5th at p. 826 [section 558 authorizes only the Labor Commissioner to seek its penalties].)

It is only because of a *different* statute—section 2699, subdivision (a)—that an aggrieved employee may seek to recover the civil penalties provided for in section 558. (See *Thurman*, *supra*, 203 Cal.App.4th at p. 1148 [an aggrieved employee who is acting as the proxy or agent of the Labor Commissioner or Labor and Workforce Development Agency by bringing a PAGA action may recover the civil penalty provided for in section 558].) Given that a claim for recovery of civil penalties provided for in section 558 is one that was originally bestowed by the Legislature on the Labor Commissioner, and that the only way an aggrieved employee can seek the civil penalties addressed in section 558 is through a representative PAGA claim, it becomes clear that a single PAGA claim

---

10   This is not the only instance in the Labor Code in which the Labor Commissioner is authorized to recover a civil penalty that will vary because it reflects the wages involved in the violation at issue. (See § 256 ["The Labor Commissioner shall impose a civil penalty in an amount not exceeding 30 days pay as waiting time under the terms of Section 203"].)

19

seeking such penalties cannot be "split" into an individual claim and a collective claim, so as to have part of the claim decided in an arbitral forum while the other part is decided in a judicial forum.

Specifically, as the *Zakaryan* court recently explained, the primary rights theory demonstrates why such "splitting" of a PAGA claim for section 558 penalties is impermissible. (See *Zakaryan*, *supra*, 33 Cal.App.5th at pp. 671–672.) Under the primary rights theory, " 'one injury gives rise to only one claim for relief' " (*Boeken v. Philip Morris USA, Inc*. (2010) 48 Cal.4th 788, 798 (*Boeken*)). A plaintiff is prohibited from " 'divid[ing] a primary right and enforc[ing] it in two suits.' " (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 904.)

A primary right is defined neither by the legal theory asserted (*Cal Sierra Development, Inc. v. George Reed, Inc.* (2017) 14 Cal.App.5th 663, 677–678) nor by the remedy being sought (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 682). Rather, a "primary right" is "the plaintiff's right to be free from the particular injury suffered." (*Id.* at p. 682.) As a general matter, "the same primary right" is at stake "[w]hen two actions involving the same parties seek compensation *for the same harm*." (*Boeken*, *supra*, 48 Cal.4th at p. 798, italics added.)

When the Labor Commissioner commences an administrative or judicial action against an employer for wage violations, the Commissioner is seeking to vindicate the state's right to be free from injury resulting from violations of the labor laws. Thus an aggrieved employee who asserts a PAGA claim for wage violations is stepping into the shoes of the Labor Commissioner and seeking to "vindicat[e] one *and only one*

'particular injury'—namely, the injury to the public that the 'state labor law enforcement agencies' were created to safeguard." (*Zakaryan*, *supra*, 33 Cal.App.5th at p. 672, quoting *Arias*, *supra*, 46 Cal.4th at p. 986 ["In a lawsuit brought under [PAGA], the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies"] and citing *Iskanian*, *supra*, 59 Cal.4th at pp. 380, 387.) In a PAGA action asserting wage violations where the aggrieved employee is acting as the proxy or agent of the state, that individual employee's "personal claims" for underpaid wages are "not at stake," nor are the personal claims of other injured employees at stake. (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 547, fn. 4.) That individual employees' personal claims are not at stake is supported by (1) the fact that an individual PAGA plaintiff and the other aggrieved employees represented by that PAGA claim may still bring their own separate individual claims for underpaid wages—i.e., their private victim-specific recovery (§ 2699, subd. (g)(1) ["Nothing in [PAGA] shall operate to limit an employee's right to pursue or recover other remedies available under state or federal law, either separately or concurrently with an action taken under this part"]), and (2) the fact that nonparty aggrieved employees are not bound by an adverse PAGA judgment when pursuing their own individual claims (*Arias*, *supra*, at pp. 985–987 [for purposes of *civil penalties*, a PAGA judgment "is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding," but where the employer prevails, nonparty employees are not bound as to remedies other than civil penalties].) Because a PAGA plaintiff *is acting on behalf of the agency* when seeking amounts sufficient to recover the underpaid wages as well as the

21

$50/$100 penalty that the Labor Commissioner could recover, and is not pursuing an individual claim for her own unpaid wages, the PAGA plaintiff's pursuit of this civil penalty (a penalty that is involves two parts) "involv[es] the same parties seek[ing] compensation for the same harm" and thus involves "the same primary right." (*Boeken*, *supra*, 48 Cal.4th at p. 798.) Therefore, attempting to "split" a PAGA claim for civil penalties under section 558 into two separate claims—a claim for an amount equal to the underpaid wages and a representative claim for the $50/$100 per-pay-period penalties that PAGA incorporates from section 558—would impermissibly divide a single primary right.

We reject the MBM defendants' contention that the opinions in *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066 (*Broughton*) and *Cruz v. PacifiCare Health Systems, Inc*. (2003) 30 Cal.4th 303 (*Cruz*) "demonstrate that the existence of a private right of action is not the test for whether a claim may be subject to arbitration under the FAA," and further "demonstrate that a single claim under the CLRA or the UCL may be severed into its arbitrable or inarbitrable pieces as necessary to be consistent with the FAA's mandate . . . ." What the MBM defendants fail to appreciate is that there is a difference between the rights provided to individuals pursuant to the CLRA and UCL and those granted to aggrieved employees under PAGA that makes CLRA and UCL cases inappropriate for comparison in the PAGA context. Specifically, the CLRA and UCL permit an individual not only to seek relief that is generally for the benefit of the public, but also to seek relief to make the individual plaintiff whole, through damages and/or restitution (in the case of the CLRA) or restitution (in the case of the UCL). (Civ.

22

Code, § 1780, subd. (a) [authorizing "[a]ny consumer who suffers any damage" as a result of method, act or practice declared unlawful under Civ. Code section 1770 to recover "[a]ctual damages," an injunction, "[r]estitution of property," "[p]unitive damages" or "[a]ny other relief" deemed proper]; Bus. & Prof. Code, § 17203 [authorizing court to "enjoin" "[a]ny person who engages . . . in unfair competition" and further authorizing court to "make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition"].)

Thus, for example, the *Broughton* court determined that an individual plaintiff's claim, brought pursuant to the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.) could be split into two and decided in two different fora. Specifically, that portion of the plaintiff's claim seeking relief in the form of damages under the CLRA could be sent to arbitration and that portion of the plaintiff's claim seeking injunctive relief to "enjoin[ ][the defendant's allegedly] deceptive [methods, acts and] practices" was to remain in court. (*Broughto*n, *supra*, 21 Cal.4th at pp. 1079–1084.) Similarly, the *Cruz* court held that an individual plaintiff's claim brought pursuant to the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.) could be split into two and decided into two different fora; in *Cruz*, the plaintiff's claim seeking restitution under the UCL could be sent to arbitration while that portion of the plaintiff's claim seeking injunctive relief to " 'enjoin[ ] [the defendant's allegedly] wrongful acts and practices' " was to remain in court. (*Cruz*, *supra*, 30 Cal.4th at pp. 308–309, 312–313, 315.)

23

It is clear that the courts in *Broughton* and *Cruz* sanctioned so-called "claim splitting" because the CLRA and UCL claims at issue in those cases involved *two* primary rights: (1) the individual plaintiff's right to be made whole through damages or restitution that was created through the CLRA and UCL statutory schemes themselves, and (2) the public's right to be protected from deceptive and/or wrongful practices through a "public injunction" sought by the individual plaintiff "act[ing] in the purest sense as a private attorney general." (*Cruz, supra*, 30 Cal.4th at p. 312; *Broughton, supra*, 21 Cal.4th at pp. 1079–1080, 1084.) Indeed, "the public injunctive relief available under the UCL [and] the CLRA . . . is primarily 'for the benefit of the general public' . . . [and] 'not to resolve a private dispute.' " (*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 961.) Thus, individual plaintiffs who bring claims pursuant to the CLRA and the UCL sometimes act in two capacities in bringing those claims—they may be acting on their own behalf and also on behalf of the general public.

In contrast, a plaintiff who brings a single PAGA claim always acts in one capacity—as the proxy or agent of the state—and an action under PAGA is " 'fundamentally a law enforcement action designed to protect the public and not to benefit private parties.' " (*Arias, supra*, 46 Cal.4th at p. 986.) This is clear based on the context and structure of the PAGA statute. As previously explained, PAGA empowers the employee-plaintiff to "recover" the "civil penalty" that would otherwise "be assessed and collected by the" agency (§ 2699, subd. (i)). Pursuant to section 558, the "civil penalty" for violations of the overtime and meal and rest period rules includes the per-pay-period penalty of $50 or $100 "in addition to an amount sufficient to recover

24

underpaid wages" (§ 558, subds. (a)(1), (a)(2)).  Thus, PAGA awards the representative plaintiff the civil penalties, and then requires that those penalties recovered be apportioned between the Agency, which receives 75 percent of the total amount in penalties, and the "aggrieved employee[s]" who suffered the Labor Code violations, who receive and share 25 percent of the total amount in penalties.  (§ 2699, subds. (a), (i); see *Atempa*, *supra*, 27 Cal.App.5th at pp. 828–829; *Moorer v. Noble L.A. Events, Inc*. (2019) 32 Cal.App.5th 736, 742 (*Moorer*); see also, *Iskanian*, *supra*, 59 Cal.4th at pp. 360, 388 [remarking that "most of the proceeds of [PAGA] litigation" would be "going to the state" and would "largely go to state coffers"].)

To the extent that the MBM defendants rely on the premise that "[t]he relief for unpaid wages under section 558 is payable 100% to the individual employee" for their contention that a claim for that aspect of the section 558 penalty is truly one for "victim-specific relief," we disagree with this premise.  Rather, we conclude that the PAGA rule of allocation of the civil penalty recovery—75 percent to the Agency and 25 percent to the aggrieved employees—applies when an aggrieved employee files a PAGA action, despite the provision in section 558 that provides that the full portion of the penalty that represents the amount reflective of the underpaid wages is to be allocated to "the affected employee[s]" (see § 588, subd. (a)(3)).  In our view, section 558 was enacted to authorize the Labor Commissioner to recover penalties for wage violations, and it provides the rule for allocation of the penalties recovered when the *Labor Commissioner* is the party enforcing the Labor Code and recovering the civil penalties available as a result of an employer's violations of the wage rules.  Thus, when the Labor Commissioner recovers

25

the civil penalties available pursuant to section 558, the Labor Commissioner is to retain the per-pay-period $50 or $100 portion of the penalties and the Labor Commissioner is to share with the employees who suffered the wage violations that portion of the penalties that represents the amount of their underpaid wages.

However, with the enactment of PAGA, a new set of rules came into existence that apply when someone other than the Labor Commissioner seeks to enforce the provisions of the Labor Code. As the statute animating an aggrieved employee plaintiff's claim, PAGA provides the overarching procedural rules governing that claim, including a provision outlining precisely how civil penalties obtained through a PAGA action are to be distributed once recovered. Specifically, PAGA provides that "civil penalties recovered by aggrieved employees *shall be distributed as follows*: 75 percent to the Labor and Workforce Development Agency . . . and 25 percent to the aggrieved employees." (§ 2699, subd. (i), italics added.) Since PAGA was enacted after section 558 (and after the enactment of many of the Labor Code provisions that provide for the recovery of other civil penalties by the Labor Commissioner), the Legislature is presumed to have been aware of the Labor code's penalty provisions (see *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 199 [when Legislature enacts statute, "we must assume that . . . the Legislature was aware of existing related laws . . . "]). Given that PAGA includes no exceptions to its mandatory distribution rules, we can assume that the Legislature intended that the provisions in PAGA pertaining to the distribution of civil penalty recoveries supersede any penalty distribution provisions in the Labor Code when those provisions conflict. Thus, it appears that the Legislature

26

intended that when an individual aggrieved employee steps into the shoes of the Labor Commissioner and recovers the civil penalties that would otherwise be recoverable solely by the Labor Commissioner, that plaintiff's recovery is subject to the distribution rules pertaining to the civil penalties recovered in a PAGA action, regardless of the existence of a different distribution scheme that would apply if the claim were brought by the Labor Commissioner. Therefore, unlike a situation in which the Labor Commissioner recovers section 558 penalties directly, where the section 588 penalties are recovered by an individual employee acting in a representative capacity for the state, any penalty or penalties recovered under section 588 (i.e., both the $50 or $100 and the amount sufficient to recover underpaid wages) are to be allocated 75 percent to the Agency and 25 percent to the plaintiff (who is to share that 25 percent with the other aggrieved employees).[11] (See § 2699, subd. (i).) At least two other courts have recently concluded that this is how section 588, subdivision (a)(3) and section 2699, subdivision (i) should be reconciled. (See *Zakaryan*, *supra*, 33 Cal.App.5th at pp. 673–674 [PAGA

_____

[11]    On this point, we diverge from the *Thurman* court's conclusion that section 558's statement that the amount representing the underpaid wages is to go to the affected employees is an "exception" to the general PAGA rule that civil penalties recovered in a PAGA action are distributed 75 percent to the LWDA and 25 percent to the aggrieved employees. (See *Thurman*, *supra*, 203 Cal.App.4th at p. 1147.) *Thurman* was decided without the benefit of the Supreme Court's opinion in *Iskanian* outlining the significance of a PAGA action as being one in which "any resulting judgment is binding on the state and any monetary penalties largely go to state coffers" to ensuring that California's public policy of prohibiting predispute waivers of PAGA claims does not contravene the FAA. (See *Iskanian*, *supra*, 59 Cal.4th at p. 388.) However, after giving consideration to the principles discussed in *Iskanian*, we conclude that the better interpretation of the interplay between section 558 and PAGA is that PAGA provides for the distribution of the recovery of civil penalties as among and between the employees and the Agency when an employee recovers those penalties through a PAGA action.

allocation rules apply when employee is bringing a PAGA claim]; *Atempa*, *supra*, 27 Cal.App.5th at pp. 828–829 [modifying judgment to provide "that the section 558(a) civil penalties awarded to [the plaintiffs] be distributed 75 percent to the LWDA and 25 percent to the aggrieved employee[s] according to section 2699, subdivision (i)"].)

A PAGA claim is, fundamentally, a representative claim. PAGA allocates 25 percent of the civil penalties recovered to the "aggrieved employees" to give individual employees an incentive to sue on the agency's behalf, and not as a means of awarding "victim-specific relief." (*Whitworth* (2018) 336 F.Supp.3d 1119, 1126; *Iskanian*, *supra*, 59 Cal.4th at pp. 387–388.) The distinction between "a PAGA litigant's status as 'the proxy or agent' of the state" versus an employee acting solely on her own behalf and "purs[uing] . . . victim-specific relief" is the underpinning of the *Iskanian* court's determination that PAGA claims are exempt from arbitration: "The civil penalties recovered on behalf of the state under the PAGA are distinct from the statutory damages to which employees may be entitled in their individual capacities." (*Iskanian*, *supra*, at pp. 387–388.) The argument that one can split off some portion of a PAGA claim on the ground that that portion seeks recovery that would constitute "victim-specific relief" ignores the definitional aspect of a PAGA claim—i.e., its representative nature.

The MBM defendants nevertheless argue that Mejia "did not need to invoke PAGA to allege unpaid wages claims under those statutes [that grant employees a private right of action, some of which underlie Mejia's PAGA claim] . . . to recover her victim-specific damages for those statutory violations." They assert that if Mejia had "sought to sue solely in her own individual capacity for those alleged violations, she would have

28

been required to arbitrate those unpaid wages claims," and argue that "by artful pleading," Mejia is being permitted to "assert a non-PAGA claim . . . in an attempt to avoid arbitration." However, the fact that an aggrieved employee has the *choice* to bring a PAGA claim, rather than to assert a claim based on her private right of action, is beyond dispute. As previously discussed, an aggrieved employee who desires to pursue judicial relief for her employer's violation of the overtime or meal and rest period rules (as opposed to administrative relief) has the option of (1) filing a lawsuit asserting a claim in her individual capacity based on a private cause of action (see §§ 1194, 218); (2) filing a lawsuit asserting a PAGA claim in a representative capacity on behalf of the state (see § 2699); or (3) filing a lawsuit asserting both an individual claim and a PAGA claim. If the employee chooses the first or third option, the employee may obtain and keep for herself all of the underpaid wages she may recover in pursuing her private right of action; but in choosing either of these options, the employee's personal claim for Labor Code violations is subject to arbitration if the employee has agreed to arbitrate her personal claims. (§§ 1194, 218; *Iskanian*, *supra*, 59 Cal.4th at p. 391.) If, on the other hand, the employee chooses the second option and files a lawsuit asserting only a PAGA claim, the employee may recover the civil penalties due for the wage violations for herself and for her fellow employees without having to pursue the claim in an arbitral forum, but she will be required to give 75 percent of the total recovery to the agency and to split the remaining 25 percent with other aggrieved employees. (§§ 2699, subds. (a), (i); *Iskanian*, *supra*, at p. 382 [a PAGA action "conforms to these traditional criteria" for bringing a *qui tam* action, "except that a portion of the penalty goes not only to the

29

citizen bringing the suit but to all employees affected by the Labor Code violation"];

*Moorer*, *supra*, 32 Cal.App.5th at pp. 742–743 [the 25 percent of the total recovery of civil penalties is to be shared among all aggrieved employees].)  Each path has potential advantages and potential detriments, and fundamentally, the choice as to which path to pursue belongs to the employee.  (See *Iskanian*, at p. 383 ["employees are free to choose whether or not to bring PAGA actions when they are aware of Labor Code violations"].)  But allowing a plaintiff's single PAGA claim to be "split" into two claims effectively usurps the plaintiff's choice to pursue a PAGA action, alone, and has the effect of rewriting the plaintiff's complaint into one that asserts an individual claim for underpaid wages (which would be subject to arbitration) and a PAGA claim (which would remain in court).  We believe that rewriting a plaintiff's complaint in this way is inappropriate, and we decline to do so.

IV.

DISPOSITION

The order of the trial court denying the MBM defendants' motion to compel arbitration is affirmed.  Mejia is entitled to costs on appeal.

AARON, J.

WE CONCUR:

BENKE, Acting P. J.

HUFFMAN, J.

30